# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Delaware Riverkeeper Network, : 
Maya van Rossum, The Delaware : 
Riverkeeper, Thomas Casey, and : 
Eric Grote, : No. 952 C.D. 2017
                 Appellants : Argued: October 18, 2017
  : 
        v. : 
  : 
Sunoco Pipeline L.P. : 

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                     HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE ROBERT SIMPSON, Judge
                     HONORABLE P. KEVIN BROBSON, Judge
                     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE ANNE E. COVEY, Judge
                     HONORABLE MICHAEL H. WOJCIK, Judge

**OPINION**
**BY JUDGE SIMPSON**                     **FILED: February 20, 2018**

         In this appeal, the Delaware Riverkeeper Network, Maya van Rossum, the Delaware Riverkeeper, and residential landowners Thomas Casey and Eric Grote (collectively, Plaintiffs) challenge orders of the Court of Common Pleas of Chester County[1] (trial court) that dismissed their complaint and denied their petitions for injunctive relief. Through their complaint and requests for injunctive relief, Plaintiffs seek to prevent Sunoco Pipeline, L.P. (Sunoco) from constructing a new set of pipelines known as the Mariner East 2 pipeline (ME2) in West Goshen Township (Township) in a manner that violates the West Goshen Township Zoning Ordinance (zoning ordinance). Plaintiffs contend the trial court erred in determining that: (1) the Township's power to regulate the location of the ME2 pipeline was

---

[1] The Honorable Mark L. Tunnell presided.

preempted by the Pennsylvania Public Utility Commission's (PUC) authority; (2) the trial court lacked subject matter jurisdiction over Plaintiffs' claims; (3) Plaintiffs did not establish a claim based on substantive due process; (4) the ME2 pipeline is a public utility facility; and, (5) Plaintiffs were not entitled to injunctive relief. Upon review, we affirm.

## I. Background
### A. Sunoco I

Sunoco is regulated as a public utility by the PUC and is a public utility corporation. In re Sunoco Pipeline, L.P., 143 A.3d 1000 (Pa. Cmwlth.) (en banc), appeal denied, 164 A.3d 485 (Pa. 2016) (Sunoco I). The PUC regulates the intrastate movement of natural gas and petroleum products or service by Sunoco through pipelines, and not the actual physical pipelines conveying those liquids. Id. at 1004.

In Sunoco I, we set forth the following relevant factual background. Pursuant to the PUC's Orders, Sunoco has Certificates of Public Convenience (CPCs) that authorize it to transport, via its pipeline system, petroleum and refined petroleum products, including propane, from and to points within Pennsylvania. In 2012, Sunoco announced its intent to develop an integrated pipeline system for transporting petroleum products and natural gas liquids (NGLs) such as propane, ethane, and butane from the Marcellus and Utica Shales in Pennsylvania, West Virginia, and Ohio to the Marcus Hook Industrial Complex (MHIC) and points in between. Sunoco's various filings described the overall goal of the Mariner East Project as an integrated pipeline system to move NGLs from the Marcellus and Utica Shales through and within the Commonwealth, and to provide take away capacity for the Marcellus and Utica Shale plays and the flexibility to reach various

commercial markets, using pipeline and terminal infrastructure within the Commonwealth.

The Mariner East Project has two phases. The first phase, referred to as Mariner East 1 (ME1), was completed and utilized Sunoco's existing pipeline infrastructure, bolstered by a 51-mile extension from Houston, in Washington County, to Delmont, in Westmoreland County, to ship 70,000 barrels per day of NGLs from the Marcellus Shale basin to the MHIC.

Sunoco has begun work on the second phase of the Mariner East Project, known as ME2. Unlike ME1, which used both existing and new pipelines, ME2 requires construction of a new 351-mile pipeline largely tracing the ME1 pipeline route, with origin points in West Virginia, Ohio, and Pennsylvania. With the exception of some valves, ME2 will be below ground level.

Significant for further discussion, new ME2 construction will be parallel to and mostly within the existing right of way of the ME1 pipeline. Id. at 1008-09.

While ME1 was underway, Marcellus and Utica Shale producers and shippers advised Sunoco that there was a need for additional capacity to transport more than the 70,000 barrels of NGLs per day being transported by ME1. As a result, Sunoco undertook to expand Mariner East Project capacity and developed the ME2 pipeline.

3

This expansion of the ME1 service will enlarge capacity to allow movement of an additional 275,000 barrels per day of NGLs, thereby allowing shippers from the Marcellus and Utica Shales to transport more barrels of NGLs through the Commonwealth to destinations within the Commonwealth, as well as to the MHIC for storage, processing, and distribution to local, domestic, and international markets. It is intended to increase the take-away capacity of NGLs from the Marcellus and Utica Shales and to enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both interstate and intrastate propane shipments and increase the amount of propane that would be available for delivery or use in Pennsylvania.

Sunoco sought and obtained PUC approval to provide intrastate service on the ME1 and ME2 pipelines. The PUC issued three final Orders in 2014 and two final Orders in 2015 confirming that Sunoco is a public utility corporation subject to PUC regulation as a public utility. The PUC also recognized that the service provided by both phases of the Mariner East Project is a public utility service.

As a result of the PUC's actions and through Sunoco's previously obtained CPCs, the PUC authorized Sunoco as a public utility to transport, as a public utility service, petroleum and refined petroleum products both east to west and west to east in the following Pennsylvania counties through which the Mariner East Project is located: Allegheny, Westmoreland, Indiana, Cambria, Blair, Huntingdon, Juniata, Perry, Cumberland, York, Dauphin, Lebanon, Lancaster, Berks, Chester, and Delaware. Sunoco's CPCs apply to both ME1 service and to ME2 service, as it is an authorized expansion of the same service. Sunoco I.

4

**B. Current Litigation**

As the trial court explained, in 2014, the Township enacted a zoning ordinance (2014 Ordinance) that regulates the location and setbacks for gas and liquid pipeline facilities. Section 84-56(B) of the zoning ordinance states: "Gas and liquid pipeline facilities" are only permitted in the I-1, I-2, I-2R, I-3 and I-C zoning districts by conditional use, subject to several enumerated standards. Gas and liquid pipeline facilities are not permitted in residential districts. Id. The conditional use standards include setback requirements for projects located in the I-1, 1-2, I-2R, 1-3 and I-C districts. Id.

In May 2017, Plaintiffs filed a complaint in the trial court, alleging that Sunoco's proposed ME2 pipeline, which is planned to run through the Township, violates the zoning ordinance (Count I).[2] They further averred that a violation of the zoning ordinance was a violation of Plaintiffs' substantive due process rights (Count II).[3]

In response, Sunoco filed preliminary objections, asserting: (1) the trial court lacked subject matter jurisdiction over Plaintiffs' claims because the PUC had

---

[2] See Section 617 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10617 ("Causes of action").

[3] Around the same time, residents of Middletown Township filed suit in the Delaware County Court of Common Pleas attempting to enforce a local land use ordinance against Sunoco's construction of the Mariner East 2 pipelines in Middletown Township. See Flynn v. Sunoco Pipeline L.P., No. 2017-004148 (C.P. Delaware). Sunoco filed a motion to coordinate the actions under Pa. R.C.P. No. 213.1 in the Delaware County Court of Common Pleas based on the similarity of the issues involved in the two cases. The Delaware County Court of Common Pleas dismissed Sunoco's motion as moot because Sunoco filed preliminary objections to the plaintiffs' complaint in the Delaware County suit, and the Delaware County Court of Common Pleas dismissed the plaintiffs' complaint with prejudice before it addressed the motion to coordinate. The plaintiffs in Flynn filed an appeal to this Court, which is docketed at 942 C.D. 2017.

5

exclusive jurisdiction over the regulation of public utilities and public utility service; (2) Plaintiffs' alleged facts were legally insufficient to state a claim upon which relief could be granted because (a) Plaintiffs lacked standing, and (b) Plaintiffs' attempt to enforce the zoning ordinance was preempted by state and federal law.

On May 25, 2017, as Sunoco began mobilizing and engaging in pre-construction activity in surrounding townships, Plaintiffs filed a petition for special injunction and a petition for preliminary injunction to stop any mobilization in the Township. After a conference with the parties to discuss the petition for special and preliminary injunction, the parties agreed that (1) many of the relevant facts were likely to be undisputed, and (2) the legal issues raised by Sunoco in its preliminary objections would impact any decision on the outstanding requests for injunction. Therefore, the parties agreed that proceeding first with the presentation and disposition of those legal issues would be appropriate.

In June 2017, the trial court heard oral argument on the issues raised in Sunoco's preliminary objections. Shortly thereafter, the trial court issued an order that sustained in part and overruled in part Sunoco's preliminary objections. In particular, the trial court: overruled Sunoco's preliminary objection alleging Plaintiffs lacked standing; sustained Sunoco's preliminary objections alleging a lack of subject matter jurisdiction and a lack of authority to regulate; sustained as moot Sunoco's preliminary objection alleging a lack of authority to regulate based on federal law; and, sustained Sunoco's preliminary objection alleging that Plaintiffs failed to establish a claim based on substantive due process. As a result, the trial court dismissed Plaintiffs' complaint with prejudice.

## C. Trial Court's Decision

In support of its order, the trial court offered the following analysis. As to Sunoco's jurisdictional challenges, the trial court explained, Sunoco raised two challenges to Plaintiffs' suit. First, Sunoco asserted that the trial court lacked subject matter jurisdiction over Plaintiffs' claims because the PUC had exclusive jurisdiction over the regulation of public utilities and public utility service and the courts lack jurisdiction over collateral attacks on the PUC's decision to authorize public utility service. Second, and relatedly, Sunoco argued the PUC's exclusive jurisdiction over public utilities and their facilities prevented application of the zoning ordinance to Sunoco's construction of the ME2 pipeline.

The trial court stated that, in order for it to properly analyze these issues, it first had to determine whether Sunoco was a public utility or was offering a public utility service such that it would fall within the PUC's jurisdiction. Through its preliminary objections and attached documents, Sunoco argued it was a public utility offering public utility services. Plaintiffs disputed that the ME2 pipeline was a public utility facility subject to the PUC's jurisdiction and suggested that the CPCs that Sunoco submitted with its preliminary objections did not address the ME2 pipeline.

In response, the trial court indicated that in numerous prior cases, Pennsylvania appellate courts confirmed what Sunoco now argues: that Sunoco is a public utility for purposes of the ME project (ME1 and ME2). To that end, the trial court stated, in Sunoco I and In re Sunoco Pipeline, L.P. (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017), 2017 WL 2062219 (unreported), appeal denied, ___ A.3d ___ (Pa., No. 400 MAL 2017, filed January 22, 2018), this Court held that: (1)

7

Sunoco is a public utility; and, (2) Sunoco's CPCs applied to both ME1 and ME2 service because it is an authorized expansion of the same service. The trial court stated that Plaintiffs offered no reason, either factual or legal, why the trial court should disregard these opinions.

Further, the trial court explained, in Sunoco I, this Court reaffirmed what "has long been the statutory mandate": that the Public Utility Code[4] "charges [the] PUC with responsibility to determine which entities are public utilities and to regulate how public utilities provide public utility service." Sunoco I, 143 A.3d at 1016; see, e.g., Pottsville Union Traction Co. v. Pub. Serv. Comm'n, 67 Pa. Super. 301 (1917). This Court further held: "It is beyond purview that the General Assembly intended [the] PUC to have statewide jurisdiction over public utilities and to foreclose local public utility regulation." Sunoco I, 143 A.3d at 1017 (citing Duquesne Light Co. v. Monroeville Borough, 298 A.2d 252 (Pa. 1972)).

Nevertheless, the trial court explained, Plaintiffs argued that a municipality, such as the Township, was permitted to enforce local ordinances against public utilities if they do not involve specific activities that the PUC regulates. The trial court stated that, at the heart of Plaintiffs' argument in opposition to Sunoco's jurisdictional challenge was its contention that the PUC does not regulate the location of any hazardous liquid pipelines; therefore, Plaintiffs' request to have the zoning ordinance enforced was not a collateral attack on a PUC decision. Plaintiffs acknowledged there was no case law that directly supported that proposition. Ultimately, the trial court disagreed with Plaintiffs' assertions.

_____

[4] 66 Pa. C.S. §§101-3316.

The trial court observed that, despite the fact that this case involves recent developments in the distribution of petroleum and refined petroleum products, Pennsylvania courts long ago addressed the legal principles at issue. Thus, the trial court explained, in Commonwealth v. Delaware and Hudson Railway Co., 339 A.2d 155 (Pa. Cmwlth. 1975), this Court addressed the same issues confronting the trial court here involving the interplay between a public utility and local zoning ordinances. In that case, the trial court stated, Lehigh Valley Railroad, a public utility, constructed a diagonal cross-over track in Dupont Borough without first applying for a building permit. As a result, Dupont Borough charged the railroad with a violation of its zoning ordinance. Relying on a long line of cases, this Court held Dupont Borough lacked authority to require a building permit.

The trial court explained that this Court in Hudson Railway began its analysis by reiterating the Pennsylvania Supreme Court's holding in Duquesne Light Co. v. Monroeville Borough that "public utilities are to be regulated exclusively by an agency of the Commonwealth with state-wide jurisdiction rather than by a myriad of local governments with different regulations." Hudson Railway, 339 A.2d at 157. Further, quoting the Supreme Court's decision in County of Chester v. Philadelphia Electric Co., 218 A.2d 331, 333 (Pa. 1966), the Court in Hudson Railway explained,

> [i]f each county were to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state. It is for that reason that the Legislature has vested in the [PUC] exclusive authority over the complex and technical service and engineering questions arising in the location, construction and maintenance of all public utilities facilities. …

9

Id. at 157. This Court in Hudson Railway concluded that the above reasoning applied equally to the challenged activity of the railroad. Therefore, Dupont Borough lacked the authority to regulate the railroad's placement of its tracks.

The trial court reasoned that the present case was even more straightforward than Hudson Railway. Unlike in Hudson Railway, the trial court stated, it was not required to "extend" the reasoning behind the above principles to the facts before it. The trial court stated there is no dispute that what is involved here is a "pipeline" and the "location" of "all public utility facilities," which the Supreme Court directly addressed in County of Chester. Thus, the regulation at issue here was within the purview of the PUC, not the trial court.

In addition, the trial court explained, contrary to Plaintiffs' assertions Section 619 of the Pennsylvania Municipalities Planning Code (MPC) ("Exemptions") does not alter this analysis. That Section provides:

> This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the [PUC] shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public. …

53 P.S. §10619.

Plaintiffs argued that "buildings" were the only structures that, if properly designated, were expressly exempted from local regulation. The trial court explained that the Court in Hudson Railway held otherwise. Indeed, in Hudson

Railway, this Court examined the impact of Section 619 of the MPC on a public utility and held,

> to the extent that Section 619 of the [MPC] gives any authority to local governments to regulate public utilities, that authority must be strictly limited to the express statutory language. The [MPC] itself states in Section 1202, 53 P.S. §11202 that it 'shall not repeal or modify any of the provisions of the Public Utility Law.'

Hudson Railway, 339 A.2d at 157. The Court in Hudson Railway concluded that because the express statutory language in Section 619 of the MPC (the word "building") did not include railroad tracks, the municipality lacked authority to enforce its zoning regulation.

Similarly, the trial court stated, in South Coventry Township v. Philadelphia Electric Company, 504 A.2d 368, 370 (Pa. Cmwlth. 1986), the township unsuccessfully argued that Section 619 acted as an "implied grant of authority" to zone a siren alert system proposed by the Philadelphia Electric Company. The township argued that "any 'structure' sought to be erected by a public utility is subject to the municipality's zoning regulations." Id. This Court disagreed, holding that the township's interpretation of Section 619 was discredited in Duquesne Light Co. v. Upper St. Clair Township, 105 A.2d 287 (Pa. 1954). In that case, a municipality raised precisely the same argument advanced by the township, that as buildings alone were to be exempted from possible application of zoning laws, a general zoning power was thereby granted to the township that would enable it to regulate public utility "uses and structures." Id. at 292. The Court in Duquesne Light v. Upper St. Clair Township expressly rejected this assertion, based on reasoning that the trial court deemed applicable here.

11

Further, in South Coventry Township, this Court concluded that Duquesne Light Co. v. Upper St. Clair Township establishes as an enduring principle that there is no power possessed by municipalities to zone with respect to utility structures other than buildings. The trial court determined that the same policy concern underlying the Duquesne Light Co. v. Upper St. Clair Township decision was present here. That policy, the trial court stated, which rejects the parochial concerns of local interests, was clearly articulated in Duquesne Light Co. v. Upper St. Clair Township.

In sum, the trial court observed, Pennsylvania courts consistently construe Section 619 narrowly and hold a township has no power to regulate a public utility by zoning ordinances with regard to uses and structures that are not buildings. See PECO Energy Co. v. Twp. of Upper Dublin, 922 A.2d 996, 1003, 1005 (Pa. Cmwlth. 2007) (holding that Supreme Court has found that the Public Utility Code gave the PUC "all-embracing regulatory jurisdiction over the operations of public utilities" and that the "legislature intended the Public Utility Code to preempt the field of public utility regulation"); see also Duquesne Light Co. v. Monroeville Borough (holding that policy of the Commonwealth in entrusting to the PUC the regulation and supervision of public utilities excluded townships from the field; no power in townships to enter that area can be read into statute by implication; unless legislature gives an express grant of power to townships, Commonwealth's own expressed policy on the subject is undiminished and supreme). Here, the trial court explained, both parties agreed that the proposed ME2 pipeline was not a building. Thus, the trial court stated, this ends the inquiry.

12

In addition, the trial court dismissed as moot Sunoco's preliminary objection alleging a lack of authority to regulate based on federal law. To that end, the trial court stated that, at oral argument, counsel for Plaintiffs advised the court that the only issue for Plaintiffs was the location of the pipeline in a residential district, instead of an industrial district, and that Plaintiffs were not raising a "safety issue." Tr. Ct. Order, 6/15/17, at 8.

As a final point, the trial court rejected Plaintiffs' due process argument. The trial court noted that Plaintiffs summarized their due process argument as follows: "Under its well established authority, [the] Township limited the industrial pipeline activities that can take place in a residential district. [Sunoco] is blatantly ignoring the residential zoning district limitations the Township determined were inappropriate …." Plaintiffs' Resp. to Prelim. Objs. at 17. Further, in paragraph 92 of their complaint, Plaintiffs alleged: "[Sunoco's] non-compliance with the [zoning ordinance] violates [Plaintiffs'] substantive due process rights." Responding to these assertions, the trial court stated, for the reasons set forth above, Sunoco did not violate or fail to comply with a zoning ordinance to which its activity was subject. Thus, the trial court rejected Plaintiffs' due process claim.

In addition, the trial court issued a separate order denying Plaintiffs' petitions for special and preliminary injunctive relief. Specifically, for the reasons stated above, the trial court determined that Plaintiffs did not show they were likely to prevail on the merits.

13

Plaintiffs appeal the trial court's orders dismissing their complaint and denying their petitions for injunctive relief to this Court.

## II. Issues

On appeal,[5] Plaintiffs contend the trial court erred in determining: (1) the Township's power to regulate the location of the ME2 pipeline was preempted by the PUC's authority; (2) the trial court lacked subject matter jurisdiction over Plaintiffs' claims; (3) Plaintiffs did not establish a substantive due process claim; (4) the ME2 pipeline project is a public utility facility; and, (5) Plaintiffs were not entitled to injunctive relief.  In the interests of clarity, we reorder some of these issues for discussion.

## III. Discussion
## A. Public Utility/Public Utility Facility
### 1. Contentions

Plaintiffs first argue that the trial court's decision is based entirely on its conclusion that the ME2 pipeline is a public utility facility.  They assert that it is not.  Therefore, Plaintiffs maintain, the trial court's order must be reversed.

[5] We exercise *de novo* review of a lower tribunal's order sustaining preliminary objections in the nature of a demurrer.  William Penn Sch. Dist. v. Dep't of Educ., 170 A.3d 414 (Pa. 2017).  The scope of our review is plenary.  Id.  We must determine "whether, on the facts averred, the law says with certainty that no recovery is possible."  Id. at 434.  In conducting our review, "we accept as true all well-pleaded material facts set forth in the [complaint] and all inferences fairly deducible from those facts."  Id.  We will sustain preliminary objections "only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief."  Id. at 434-35 (citation omitted).

In addition, in reviewing a trial court's order denying a preliminary injunction, our review is highly deferential.  We "examine the record only to determine 'if there were any apparently reasonable grounds for the action of the court below ....'"  Reed v. Harrisburg City Council, 927 A.2d 698, 703 (Pa. Cmwlth. 2007) (citation omitted).  Indeed, "[o]nly if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will the decision be interfered with."  Unionville-Chadds Ford Sch. Dist. v. Rotteveel, 487 A.2d 109, 111 (Pa. Cmwlth. 1985) (emphasis in original).

14

Plaintiffs contend that Sunoco has changed its position regarding the ME2 pipeline, arguing that the ME2 pipeline is intrastate, and Sunoco is a public utility, to suit its needs. To that end, Plaintiffs argue, only after Sunoco lost in a condemnation proceeding in York County, did it seek approval to provide intrastate service. Reproduced Record (R.R.) at 17a-18a; see Sunoco Pipeline, L.P. v. Loper, No. 2013-SU-4518-05 (C.P. York 2014) (reaffirmed March 25, 2014); see also Sunoco I (McCullough, J., dissenting).

Plaintiffs assert that in June 2014, Sunoco applied to the PUC for approval to construct a portion of the ME2 pipeline in Washington County to extend its service into that county, which is located on the West Virginia border. Plaintiffs argue that the PUC only ordered that a CPC should issue authorizing Sunoco to *offer petroleum products to the public in Washington County*. They contend Sunoco relies on this PUC order and CPCs issued decades ago to support its claim that the ME2 pipeline is a public utility facility. However, Plaintiffs assert, none of those CPCs address the ME2 pipeline.

Moreover, Plaintiffs argue, the Public Utility Code limits a "public utility" only to those corporations transporting "for the public for compensation." See 66 Pa. C.S. §102. Plaintiffs contend the ME2 pipeline will not provide service for the public.

Further, by dismissing Plaintiffs' complaint before affording them an opportunity to conduct discovery, Plaintiffs maintain, the trial court limited Plaintiffs' ability to develop the facts necessary to support their argument. They

15

argue they should have been permitted to develop a record on this issue.[6] Thus, Plaintiffs assert, the trial court's conclusion that Plaintiffs offered no factual basis as to why it should find that the ME2 pipeline is not a public utility facility, should be set aside. As the ME2 pipeline is not a public utility facility, Plaintiffs argue, the trial court's conclusion that the zoning ordinance was preempted by the PUC was erroneous.

Sunoco responds that the trial court correctly determined that Sunoco is a public utility and that the ME2 pipeline is part of its public utility facilities, based on this Court's controlling decision in Sunoco I and subsequent decisions. In Sunoco I, this Court examined the CPCs that the PUC issued to Sunoco, together with other orders and decisions the PUC rendered regarding Sunoco, and held: "Sunoco is regulated as a public utility by [the] PUC and is a public utility corporation, and Mariner East intrastate service is a public utility service rendered by Sunoco." Id. at 1020. Although this Court issued that decision in an eminent domain case, Sunoco argues, the holding regarding the scope of the PUC's regulation is not limited to that context. Rather, the holding that Sunoco is a public utility regulated by the PUC, and that the ME2 service is part of its PUC-certificated public utility service applies to all cases questioning Sunoco's public utility status in light of the CPCs and other PUC orders and decisions this Court examined in Sunoco I.

---

[6] See Clean Air Council v. Sunoco Pipeline, August Term, 2015, No. 03484 (C.P. Phila. May 25, 2017) (summary judgment not proper as record was still incomplete on, among other things, ME2 pipeline's status as a public utility facility); Clean Air Council v. Sunoco Pipeline, August Term, 2015, No. 03484 (C.P. Phila. March 1, 2017) (overruling Sunoco's preliminary objections asserting court lacked jurisdiction because of Sunoco's alleged public utility status).

In attempting to argue the ME2 pipeline is not a public utility facility, Sunoco contends, Plaintiffs do not allege the service Sunoco is providing in this case is any different from that at issue in Sunoco I. They also do not deny that the PUC issued Sunoco Pipeline the CPCs that this Court examined in Sunoco I, nor do they allege the PUC issued other orders or decisions calling Sunoco's public utility status into question. R.R. at 18a-19a, 25a, 200a-02a, 218a-240a, 278a-89a (recognizing the PUC issued Sunoco CPCs that this Court examined in Sunoco I).

Instead, Sunoco argues, Plaintiffs rely on the dissenting opinion in Sunoco I and a trial court opinion, which this Court distinguished in Sunoco I as irrelevant to the analysis of Sunoco's public utility status in light of its regulation by the PUC. See Sunoco I, 143 A.3d at 1014-15. Sunoco argues the *en banc* decision in Sunoco I is the law, and it establishes that the ME2 pipeline is part of Sunoco's public utility facilities, subject to the PUC's regulation. See In re Condemnation by Sunoco Pipeline L.P. (Katz) 165 A.3d 1044, 1053 (Pa. Cmwlth. 2017) (McCullough, J., concurring), appeal denied, ___ A.3d ___ (Pa., No. 507 MAL 2017, filed January 22, 2018).

## 2. Analysis

Based on our recent *en banc* decision in Sunoco I, we hold that Sunoco is regulated as a public utility by the PUC and is a public utility corporation. In addition, we hold that Sunoco is providing intrastate pipeline transportation services regulated by the PUC. We reject Plaintiffs' arguments to the contrary.

17

As a regulated public utility providing intrastate pipeline transportation services under the Public Utility Code, Sunoco is expressly required to furnish and maintain adequate, efficient, safe and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees and the public. 66 Pa. C.S §1501 (entitled "Character of service and facilities"). According to the PUC, if Sunoco concludes it is necessary to expand the previously certificated service, it is permitted to upgrade current facilities and expand existing capacity as needed. Sunoco I, 143 A.3d at 1006; see also Duquesne Light Co. v. Pa. Pub. Utility Comm'n, 63 A.2d 466 (Pa. Super. 1949) (Duquesne Light Co. v. PUC) (public utility company, in exercise of its managerial functions, may determine in first instance type and extent of its service to public within limits of adequacy and reasonableness, but service must conform to PUC regulations and orders). The PUC determined that the expansion proposed by Sunoco was necessary and proper for the service, accommodation, and convenience of the public. Sunoco I, 143 A.3d at 1007.

On its own motion or upon complaint, and after notice and hearing, whenever the PUC finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of the Public Utility Code, the PUC shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and

18

convenience of the public. 66 Pa. C.S. §1505(a) (entitled "Proper service and facilities established on complaint"); see also 66 Pa. C.S §701 (entitled "Complaints"). We acknowledge this express statutory remedy.

Plaintiffs argue that the ME2 pipeline is not properly located because parts of it are proposed for incompatible residential zones where permission for such use has recently been withdrawn. Plaintiffs' Compl. at ¶11 ("Under the [2014] Ordinance a public utility facility use is permitted by conditional use, and no longer permitted by right in residential districts."). Plaintiffs also refer to the "hazardous" nature of the petroleum products involved in the pipeline transportation services, e.g., Appellants' Br. at 4; Reply Br. of Appellants at 21, protection of public natural resources generally, recent damage to drinking water supplies in particular, Reply Br. of Appellants at 12, and detrimental impacts on health, safety, welfare and property values. Id. at 13. We view these assertions as implicating the reasonableness and safety of the pipeline transportation services or facilities, matters committed to the expertise of the PUC by express statutory language. 66 Pa. C.S. §1505.

## B. Preemption by Public Utility Code
### 1. Contentions

Plaintiffs next assert the trial court held that the Township's ability to regulate the location of a "highly volatile liquid" (HVL) pipeline in a residential district was preempted by the PUC's authority, despite the fact that the PUC does not regulate the location of such pipelines. Appellants' Br. at 4, 10. In reaching its conclusion, Plaintiffs argue, the trial court relied on a line of cases, including Duquesne Light Co. v. Monroeville Borough, County of Chester, Duquesne Light

Co. v. Upper St. Clair Township, South Coventry Twp., and Delaware and Hudson Railway Co. However, Plaintiffs contend, a review of those cases makes clear that they do not support the broad preemption that the trial court found here.

Initially, Plaintiffs argue the zoning ordinance does not conflict with the PUC's authority. Plaintiffs contrast this case with the Supreme Court's decision in Duquesne Light Company v. Monroeville Borough,[7] asserting that the PUC here concedes it does not have regulatory authority over the location of HVL pipelines. See Krueger-Braneky: Questions Over Natural Gas Pipeline Safety, https://www.youtube.com/watch?v=KbXpkxkT3Mo (last visited January 22, 2018) (March 1, 2017 testimony before Pennsylvania House of Representatives); Chester County Association of Township Officials, *Guide to Pipelines for Chester County Municipalities* at 6 http://www.ccato.org/DocumentCenter/View/103 ("Pennsylvania has no designated regulatory authority overseeing the siting of hazardous liquid pipelines.") (last visited January 22, 2018). Thus, Plaintiffs maintain they could not have invoked the PUC's "procedural machinery" here. Appellants' Br. at 12. Without the ability to avail themselves to the trial court, Plaintiffs contend, they are left without a mechanism to vindicate their rights.

Plaintiffs further argue the Township has authority to establish zones in which HVL pipelines may and may not be located. While the trial court relied on the Supreme Court's decision in County of Chester in holding to the contrary, Plaintiffs contend, County of Chester is distinguishable. To that end, the Court in County of Chester specifically distinguished between the authority of a county and

---

[7] See also Pa. Power Co. v. Twp. of Pine, 926 A.2d 1241 (Pa. Cmwlth. 2007) (en banc).

a municipality. They assert that, in contrast to a county, it has long been held that municipalities have zoning authority to regulate as to matters of health, safety, and welfare, even when the matter involves a public utility. See York Water Co. v. York, 95 A. 396, 396 (Pa. 1915); see also Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926); Swade v. Zoning Bd. of Adjustment of Springfield Twp., 140 A.2d 597 (Pa. 1958); Robinson Twp. v. Commonwealth, 52 A.3d 463 (Pa. Cmwlth. 2012) (Robinson Twp. I), aff'd in part, rev'd in part, 83 A.3d 901 (Pa. 2013).

Most recently, and perhaps most importantly, Plaintiffs contend, the Pennsylvania Supreme Court set forth the clear limitations on the General Assembly's authority "to remove a political subdivision's implicitly necessary authority to carry into effect its constitutional duties." Robinson Twp. v. Commonwealth, 83 A.3d 901, 977 (Pa. 2013) (Robinson Twp. II); see also Pa. Envtl. Def. Found. v. Commonwealth, 161 A.3d 911, 931 (Pa. 2017) (PEDF).

Plaintiffs argue the General Assembly derives its power from Article III of the Pennsylvania Constitution, which grants broad and flexible police powers to enact laws to promote public health, safety, morals, and the general welfare. PEDF; Robinson Twp. II. These powers, however, are expressly limited by the fundamental rights reserved to the people in Article I of the Pennsylvania Constitution. PEDF; Robinson Twp. II. Among the rights in Article I are the rights set forth in Article I, Section 27 (referred to as the "Environmental Rights Amendment") (ERA), which provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural

resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

PA. CONST. art I, § 27.

Significantly, Plaintiffs maintain, the trustee obligations set forth in the ERA are not vested exclusively in any single branch of Pennsylvania government. PEDF; Robinson Twp. II. Instead all Commonwealth agencies and entities have a fiduciary duty to act toward the corpus with prudence, loyalty and impartiality. PEDF; Robinson Twp. II. "This includes local governments." Robinson Twp. II, 83 A.3d at 956-57. Plaintiffs contend municipalities have those powers expressly granted to them by the Pennsylvania Constitution or by the General Assembly, and other authority implicitly necessary to carry into effect those express powers. Id. They assert that, while the General Assembly has the authority to alter or remove powers granted and obligations imposed on the municipality by statute, "constitutional commands regarding municipalities' obligations and duties to their citizens cannot be abrogated by statute." Id. at 977. Plaintiffs argue the General Assembly has no authority to remove a political subdivision's implicitly necessary authority to carry into effect its constitutional duties. Id.

Further, Plaintiffs maintain, as to the public trust provisions of the ERA Amendment, "the General Assembly can neither offer political subdivisions purported relief from obligations under the [ERA], nor can it remove necessary and reasonable authority from local governments to carry out these constitutional duties." Id. When the General Assembly commands municipalities to ignore their

22

obligations under the ERA and further directs them to take affirmative actions to undo existing protections of the environment in their localities, Plaintiffs argue, it "transgresses its delegated police powers which, while broad and flexible, are nevertheless limited by constitutional commands, including the [ERA]." Id. at 978.

Plaintiffs assert that, in Pennsylvania, protection of environmental values "is a quintessential local issue and must be tailored to local conditions." Id. at 979. "[A] new regulatory regime permitting industrial uses as a matter of right in every type of pre-existing zoning district is incapable of conserving or maintaining the constitutionally protected aspects of the public environment and of a certain quality of life." Id. Thus, when a local government is required to permit industrial uses in all zoning districts "some properties and communities will carry much heavier environmental habitability burdens than others …. This disparate effect is irreconcilable with the express command that the trustee manage the corpus of the trust for the benefit of 'all the people.'" Id. at 980 (quoting PA. CONST. art I, § 27). Plaintiffs argue that, placing uses in zoning districts not designated for those types of uses, *i.e.* "spot uses," disrupts the rational zoning scheme as a whole. Robinson Twp. I, 52 A.3d at 484 n.21.

Plaintiffs contend that, by finding that the zoning ordinance regulating the location of HVL pipelines in residential districts is preempted by the PUC's authority, the trial court did precisely what the Supreme Court prohibited in Robinson Township II. It allowed the General Assembly to remove the Township's ability to carry out its constitutionally mandated, and quintessentially local, duties as a trustee under the ERA. Plaintiffs argue this allowed the General Assembly to

transgress its delegated police powers, which are limited by the ERA. Further, it allowed Sunoco, under the guise of the PUC, to place an industrial use as a matter of right in every type of pre-existing zoning district, a scheme that is incapable of conserving or maintaining the constitutionally protected aspects of the public environment and of a certain quality of life. It also allowed some properties to carry a much heavier environmental habitability burden than others, undermining the Township's ability as trustee to manage the corpus of the trust for the benefit of "all the people." PA. CONST. art. I, §27. They argue such a clear violation of the ERA cannot stand.

Plaintiffs further argue Section 619 of the MPC does not preempt the zoning ordinance. In its order, Plaintiffs contend, the trial court relied on Section 619 for the proposition that a township has no power to regulate a public utility by zoning ordinance with respect to uses and structures that are not buildings. Significantly, Plaintiffs assert, the trial court derived this broad reading of Section 619 from a line of cases which state that Section 619 "must be strictly limited to the express statutory language." Hudson Railway, 339 A.2d at 157. In finding Section 619 so restricts the authority of municipalities, Plaintiffs maintain, the trial court failed to adhere to the "strict limitations" of Section 619 and instead found "implied" limitations on municipal authority that do not exist. Plaintiffs contend the trial court misconstrued cases interpreting this provision.

Sunoco responds that the trial court correctly decided that the PUC's exclusive jurisdiction over the regulation of public utilities preempts the zoning ordinance as applied to Sunoco's construction of the ME2 pipeline. It argues

24

longstanding Pennsylvania law provides that, because the PUC has exclusive jurisdiction over the regulation of public utilities and their facilities, local regulations that threaten to interfere with public utilities' construction or operation of facilities dedicated to public service are preempted. Duquesne Light Co. v. Monroeville Borough; Cnty. of Chester; Duquesne Light Co. v. Upper St. Clair Twp.; Twp. of Upper Dublin; Hudson Railway.

Sunoco contends preemption of zoning ordinances is well-established. See Duquesne Light Co. v. Monroeville Borough (zoning); County of Chester (land development plans); Duquesne Light Co. v. Upper St. Clair Twp. (zoning and building permits); see also S. Coventry Twp.; Newtown Twp. v. Phila. Elec. Co., 594 A.2d 834 (Pa. Cmwlth. 1991). It argues that preemption of local ordinances attempting to regulate public utilities is required because subjecting public utilities to "a myriad of local governments with different regulations[,]" Hudson Railway, 339 A.2d at 157, would "clearly burden and indeed disable [them] from successfully functioning as … utilit[ies]." S. Coventry Twp., 504 A.2d at 372.

Sunoco asserts the only public utility facilities that are potentially subject to local zoning regulations are buildings because the General Assembly expressly granted municipalities zoning power over buildings in Section 619 of the MPC. S. Coventry Twp., 504 A.2d at 370-71 (holding municipalities have no power to zone as to utility structures other than buildings); see also Duquesne Light Co. v. Upper St. Clair Twp. Sunoco maintains the MPC does not grant municipalities general zoning power over any other types of public utility facilities. Rather, "the policy of the Commonwealth in entrusting to the [PUC] the regulation and

supervision of public utilities has excluded townships from the same field" means that "no power in townships to enter that area can be read into the [MPC] by implication." Id. at 292. Indeed, Sunoco contends, the MPC emphasizes it does not intend to grant municipalities general power to regulate public utilities by stating it does not "repeal or modify any of the provisions of [the Public Utility Code]." Section 1202 of the MPC. Here, Sunoco asserts, the ME2 pipeline is not a building; it is a pipeline that crosses through numerous municipalities in Pennsylvania, and it is affected with a statewide concern. See Hudson Railway.

Moreover, Sunoco argues, in granting public utilities condemnation power, the General Assembly expressly imposed no limitations on the distance of a pipeline from a residence. See 15 Pa. C.S. §1511(b)(1) (providing that while no public utility corporation can condemn a dwelling house "for the purpose of constructing any street railway, trackless-trolley omnibus, petroleum or petroleum products transportation or aerial electric transmission, aerial telephone or aerial telegraph lines[,]" condemnations for "petroleum or petroleum products transportation lines" are not subject to the additional restriction imposed on the other types of lines that the condemnation cannot include "any part of the reasonable curtilage of a dwelling house within 100 meters therefrom"). Sunoco asserts this exception from a distance requirement on condemnation for petroleum products pipelines shows the General Assembly considered whether the location of pipelines in relation to dwellings should be limited, and it determined not to restrict the location of those pipelines.

26

Sunoco further contends, because the PUC's regulatory authority over public utilities is broad, municipalities may not regulate merely because the PUC has not issued a specific regulation. Contrary to Plaintiffs' claims, Sunoco argues, whether or not the PUC promulgated specific regulations covering the same area as Section 84-56(B) of the zoning ordinance is irrelevant to the preemption analysis because the PUC has exclusive jurisdiction over the regulation of public utilities and their facilities, and municipalities have no implied power to regulate public utilities under the MPC.

Sunoco maintains that, under the Public Utility Code, the PUC has broad regulatory authority over Sunoco's implementation of the ME2 pipeline and its provision of the ME2 service. See 66 Pa. C.S. §§501, 506, 701, 1501, 1504, 1508. Ignoring this authority, Sunoco argues, Plaintiffs focus on the fact that the current regulatory scheme does not provide a mechanism for the government to review the entire route of a petroleum product pipeline before a pipeline operator seeks permits and other approvals required in connection with constructing a pipeline. Nevertheless, Sunoco asserts, a lack of specific regulation over a pipeline's route does not leave room for local regulation, and it particularly does not leave room for the zoning ordinance, which does not address the route of the pipeline through Pennsylvania, but rather addresses Sunoco's implementation of its public utility facilities, which is within the PUC's jurisdiction.

Sunoco further contends the MPC does not grant the Township the power to regulate Sunoco's public utility facilities through the zoning ordinance. It asserts that "[e]ven where the state has granted [municipalities] powers to act in a

27

particular field … such powers do not exist if the Commonwealth preempts the field." Huntley & Huntley, Inc. v. Borough Council of Oakmont, 964 A.2d 855, 862 (Pa. 2009). As such, Sunoco argues, the Township has no power to regulate Sunoco's public utility facilities, and the zoning ordinance is preempted as applied to Sunoco's construction of the ME2 pipeline. Therefore, the trial court properly dismissed Plaintiffs' complaint.

Sunoco also maintains the ERA does not grant municipalities the authority to regulate public utilities. It asserts Plaintiffs now attempt to evade preemption by arguing that the ERA requires municipalities to regulate public utilities to preserve the environment, and that preemption violates the ERA.

Sunoco asserts that, despite Plaintiffs' contentions, the ERA does not grant regulatory power to municipalities where that power is preempted or otherwise prohibited. Instead, the ERA requires municipalities to make decisions and take actions they are already empowered to take, in a manner that satisfies their duty to act as trustee of Pennsylvania's public natural resources for the benefit of the people. PA. CONST. art. I, § 27; PEDF; Robinson Twp. II.

Sunoco maintains that, while municipalities are bound to adhere to their trustee duties under the ERA in making decisions that may affect the environment and in taking actions they are empowered to take, this duty does not grant them power to infringe on the PUC's exclusive jurisdiction to regulate public utilities. Cf. Robinson Township II, 83 A.3d at 901 (holding that a statute unconstitutionally limited municipal zoning power over "oil and gas operations" (*i.e.*, fracking-related

28

operations that are not related to public utility service and that do not implicate the provision of a statewide public utility service)).

Even assuming the ERA empowers the Township to regulate public utilities with regard to the environment in the face of PUC preemption, Sunoco argues, Plaintiffs fail to show how the zoning ordinance furthers the Township's ERA trustee duties.

Sunoco maintains Plaintiffs do not show how the zoning ordinance relates to conserving the public's natural resources. Sunoco asserts the zoning ordinance purports to prohibit pipelines from all zoning districts except certain industrial zones, subject to 18 standards. Section 84-56(b) of the zoning ordinance. But, in contrast to the fracking operations at issue in Robinson Township II, Sunoco contends, pipelines, which merely transport products from one point to another, do not inherently diminish the environment. Cf. Robinson II, 83 A.3d at 979-80 (fracking operations designed to actively exploit the natural gas found in the Marcellus Shale Formation cause "air, water, and soil pollution; persistent noise, lighting, and heavy vehicle traffic; and the building of facilities incongruous with the surrounding landscape"). Indeed, Sunoco argues, pipelines have co-existed alongside residential uses of property in Pennsylvania for over a century.

Sunoco argues here the route of the ME2 pipeline parallels an existing pipeline that has been in place for decades, which traverses all types of zoning districts, including residential districts. It asserts pipelines are not a new, invasive use that alter settled expectations about property, but rather are a well-established

part of Pennsylvania's landscape. See, e.g., Commonwealth v. Keystone Pipe Line Co., 24 Pa. D. & C. 400 (C.P. Dauphin 1934, Cmwlth. Dkt.) (discussing history of pipeline transportation in Pennsylvania).

In addition, Sunoco contends, to the extent Plaintiffs are arguing the Public Utility Code is unconstitutional in giving the PUC exclusive regulatory authority over public utilities, this is another argument Plaintiffs did not raise before the trial court. In any event, Sunoco argues, as a Commonwealth agency, the PUC is required to act as a trustee under the ERA. Here, Sunoco maintains, the PUC did consider the environmental effects of the Mariner East project when it reviewed Sunoco's CPC applications and authorized provision of the ME2 service.[8]

Sunoco also asserts the Department of Environmental Protection (DEP) exercised ERA duties over the ME2 pipeline by reviewing Sunoco's applications for environmental permits and considering the project's environmental effects before issuing permits.

Sunoco further maintains that, contrary to Plaintiffs' assertions, Plaintiffs have a remedy to address their dissatisfaction with Sunoco's construction of the ME2 pipeline, just not through this suit. Specifically, Sunoco argues, the Public Utility Code allows "any person … having an interest in the subject matter … [to] complain in writing, setting forth any act or thing done or omitted to be done

---

[8] For example, Sunoco contends, in its 2014 application to the PUC for a CPC for Washington County, Sunoco provided the PUC with information about the environmental effects of the ME2 pipeline project, stating that in selecting the route of the pipelines, it sought to minimize impacts to the natural and human environment, minimize route length and cost, avoid densely populated areas, maximize distance from residences, schools, cemeteries, historical resources, and recreation areas, and minimize impacts to wetlands and conservation areas.

by any public utility in violation, or claimed violation, of any law which the [PUC] has jurisdiction to administer, or of any regulation or order of the [PUC] .... " 66 Pa. C.S. § 701. Thus, Sunoco asserts, Plaintiffs could bring their grievances before the PUC, and the PUC would have the power to adjudicate those claims.

Sunoco argues Plaintiffs could also ask the General Assembly to amend the Public Utility Code to require the PUC to regulate pipelines in a particular way. See Cnty. of Chester. However, Sunoco maintains, Plaintiffs may not use the courts to infringe on the PUC's exclusive jurisdiction over the regulation of public utilities and impede the provision of a statewide public utility service that the PUC already determined will benefit the public.

In reply, Plaintiffs again assert that the PUC's authority does not preempt the zoning ordinance. Plaintiffs argue that Sunoco broadly contends the PUC has exclusive jurisdiction over the regulation of public utilities and their facilities. In support, Sunoco relies on cases involving electric transmission lines and other electric utility facilities. However, Plaintiffs argue, electric utilities and pipelines are regulated differently by the PUC. To that end, the PUC promulgated an array of regulations to address the siting of electric facilities. See, e.g., Pa. Code, Title 52, Chapter 57, Subchapter G ("[PUC] Review of Siting and Construction of Electric Transmission Lines").

In contrast, Plaintiffs argue, the PUC does not regulate the siting of HVL pipelines. Plaintiffs assert that, as Sunoco concedes, the PUC has not issued regulations covering the same subject that the zoning ordinance addresses. Plaintiffs

31

contend that, despite the PUC's and Sunoco's statements to the contrary, Sunoco attempts to argue that the PUC does, in fact, regulate the location of HVL pipelines based on 15 Pa. C.S. §1511(b)(1). Plaintiffs maintain this provision addresses setbacks for public utility eminent domain proceedings. They contend the instant case does not involve the exercise of eminent domain; thus, the cited provision does not apply to the issue presented here.

Plaintiffs further argue Sunoco also relies on multiple Public Utility Code provisions that it claims show the PUC has authority over the ME2 pipeline. However, Plaintiffs assert none of these provisions relate to the siting of a pipeline.

In addition, Plaintiffs acknowledge Sunoco's argument that, even if the PUC does not regulate the siting of the pipeline, other governmental entities reviewed and approved matters relating to siting concerns. Plaintiffs note that Sunoco identifies sections of applications it submitted to, among other entities, DEP, which identify the location of the pipeline. However, Plaintiffs argue, Sunoco does not indicate what the agencies did with this information nor does it identify any authority granting DEP or any other agency power over the siting of HVL pipelines. In fact, Plaintiffs assert, neither DEP nor any other agency has such authority.

Plaintiffs further maintain the PUC's authority does not preempt the MPC. To that end, Plaintiffs point out that Sunoco cites Section 1202 of the MPC, the statute's savings clause, for the erroneous proposition that the Public Utility Code preempts municipal authority under the MPC. Plaintiffs argue Section 1202 provides, among other things, that the MPC does not "repeal or modify any of the

32

provisions of 66 Pa.C.S. Pt. I (relating to public utility code) ….” 53 P.S. §11202. Thus, by its express terms, Plaintiffs assert, the MPC does not preempt the Public Utility Code.

Under the rules of statutory construction, Plaintiffs assert, to the extent the MPC and the Public Utility Code relate to the same things, *i.e.*, the location of a purported public utility HVL pipeline, they must be read *in pari materia*. See 1 Pa. C.S. §1932(a). Here, Plaintiffs argue, there is no conflict between the Public Utility Code and the MPC. Therefore, the MPC, and the Township’s authority to regulate the location of HVL pipelines in residential districts under that statute, must be given effect.

Plaintiffs also point out that Sunoco claims the construction and operation of its pipeline does not implicate the rights protected by the ERA because pipelines, which merely transport products from one point to another, do not inherently diminish the environment. Plaintiffs argue it should be beyond dispute that installation of an underground pipeline 20 inches in diameter, which is subject to various state and federal environmental permits, to transport HVLs by subjecting them to high pressure, implicates the public natural resources protected by the ERA. Plaintiffs assert that, if there were any doubt of this prior to commencement of pipeline construction, recent damage to drinking water supplies in Uwchlan Township should resolve such doubt. See Bill Rettew Jr., *Uwchlan residents discuss Mariner East 2 pipeline, water problems*, delcotimes.com, http://www.delcotimes.com/article/DC/20170713/NEWS/170719873 (last visited January 22, 2018). Plaintiffs contend that, as alleged in their complaint, the pipeline

33

is an industrial use with known detrimental impacts on health, safety, welfare, property values, and public natural resources in residential areas. Compl. at ¶109.

Also, Plaintiffs argue acceptance of Sunoco's position would leave Plaintiffs without a forum in which to vindicate their rights. Having failed to even attempt to comply with the zoning ordinance, Plaintiffs assert, Sunoco now seeks to preclude Plaintiffs from challenging its actions in the only forum with jurisdiction, the trial court. Plaintiffs contend Sunoco claims that Plaintiffs could attempt to bring their grievances before the PUC. Contrary to this assertion, Plaintiffs argue, this case does not relate to a law that the PUC has jurisdiction to administer or a regulation or order of the PUC. Rather, the PUC has no statutory or regulatory authority governing the location of an HVL pipeline though which Plaintiffs can seek relief before the PUC.

## 2. Analysis

For the following reasons, we hold that the Township lacks authority to zone out a public utility pipeline service or pipeline facility regulated by the PUC.

There are three generally recognized forms of preemption: (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a specific subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments.

34

Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty., 32 A.3d 587, 593-94 (Pa. 2011) (citations omitted).

### a. Field Preemption

If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself, and no local legislation in that field is permitted. Id. Both field and conflict preemption require an analysis of whether preemption is implied in or implicit from the text of the whole statute, which may or may not include an express preemption clause. Id.

In Duquense Light Co. v. Upper St. Clair Township, our Supreme Court held that field preemption precluded the application of a township zoning ordinance to a public utility. The Court adopted the language of the chancellor examining numerous provisions of the former Public Service Company Law of 1913,[9] and its predecessors, and the 1931 First Class Township Law,[10] together with a 1949 amendment. The adopted language included the following:

> Thus, long before first class townships ever acquired any zoning powers, The General Assembly had clearly expressed the policy of the Commonwealth to commit the regulation to a commission of state-wide jurisdiction, and to impose a duty upon utilities to render adequate and efficient service and to make such changes in or extension of their facilities and service as might be necessary to accommodate or serve the public.

---

[9] Act of July 26, 1913, P.L. 1374, as amended, formerly 66 P.S. §§1-1009.

[10] Act of June 24, 1931, P.L. 1206, as amended, formerly 53 P.S. §§55101-58502.

35

Dusquesne Light Co. v. Upper St. Clair Twp., 105 A.2d at 291 (emphasis added).

The Supreme Court also adopted language stating that:

> [T]he policy of the Commonwealth of entrusting to the Commission the regulation and supervision of public utilities has <u>excluded townships from the same field</u>, and that no power in townships to enter that area can be read into the First Class Township Law by *implication*. Unless the legislature has given an *express* grant of power to townships, the Commonwealth's own expressed policy on the subject is undiminished and supreme.

Id. at 292 (emphasis by underline added, emphasis by italics in original).

The Supreme Court added its own discussion on the policy driving its holding in favor of the public utility:

> Any other conclusion than that reached by the chancellor would render the [PUC] powerless to regulate the functioning of an electric service company if in so doing the [PUC] contravened any regulation or order of a local zoning authority. <u>If the power of the municipality were held paramount, the [PUC] could not compel the utility to provide adequate service or in anywise control the expansion or extension of the utility's facilities if an order of the [PUC] conflicted with action taken by any political subdivision of the State</u>. This would mean the complete negation of the powers of regulation and control specifically given as a matter of public policy to the [PUC] in the interest of state-wide public welfare.

Id. at 293 (emphasis added).

Our Supreme Court has repeated this result and reasoning on other occasions. E.g., Cnty. of Chester (county without authority to enact ordinance

36

prohibiting construction of gas pipeline without first submitting plans and specifications for construction; citing, inter alia, Duquesne Light Co. v. Upper St. Clair Township). More particularly, our Supreme Court in County of Chester adopted the reasoning of a prior Supreme Court decision which stated:

> [N]o principle has become more firmly established in Pennsylvania law than that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC-not in the courts. It has been so held in matters involving rates, service, rules of service, extension and expansion, hazard to public safety due to use of utility facilities, location of utility facilities, installation of utility facilities, obtaining, alerting, dissolving, abandoning, selling, or transferring any right, power, privilege, service franchise or property and rights to serve a particular area.

Cnty. of Chester, 218 A.2d at 332-33 (quoting Landsdale Borough v. Phila. Elec. Co., 170 A.2d 565, 566-67 (Pa. 1961)) (footnotes omitted).

Further, in County of Chester the Supreme Court examined the entire 1937 Public Utility Law,[11] and concluded that Sections 401, 412, 413, 420, 507, 905, 906, 908, 1001, 1008, and 1009 (66 P.S. §§1171, 1182, 1183, 1190, 1217, 1345, 1346, 1348, 1391, 1398, and 1399), together with accompanying regulations of the PUC, have designed and developed the machinery which standardizes the construction, operation, and services of public utilities throughout Pennsylvania.

---

[11] Act of May 28, 1937, P.L. 1053, as amended, formerly 66 P.S. §§1101-1562.

37

County of Chester, 218 A.2d at 333. This Court is bound by these Supreme Court decisions.[12]

This Court has expressly followed our Supreme Court's Duquesne Light Co. v. Upper St. Clair Township preemption holding on numerous occasions. E.g., PPL Elec. Utils. Corp. v. City of Lancaster, 125 A.3d 837 (Pa. Cmwlth. 2015); Pa. Power Co. v. Twp. of Pine, 926 A.2d 1241 (Pa. Cmwlth. 2007) (en banc); Twp. of Upper Dublin; S. Coventry Twp.

Following our careful review of the Public Utility Code, and in particular the current iterations of the provisions cited by our Supreme Court in County of Chester, we conclude that the General Assembly intended the PUC to occupy the field of public utility regulation, in the absence of an express grant of authority to the contrary. See 66 Pa. C.S. §§ 309 (entitled "Oaths and subpoenas"), 315 (entitled "Burden of proof"), 331 (entitled "Powers of commission and administrative law judges"), 504 (entitled "Reports by public utilities"), 505 (entitled "Duty to furnish information to commission; cooperation in valuing property"), 506 (entitled "Inspection of facilities and records"), 701 (entitled "Complaints"), 1501 (entitled "Character of service and facilities"), 1504 (entitled "Standards of service and facilities"), 1505 (entitled "Proper service and facilities established on complaint; authority to order conservation and load management programs").

_____

[12] Plaintiffs attempt to distinguish County of Chester v. Philadelphia Electric Co., 218 A.2d 331 (Pa. 1966), from the current case because it involved a county rather than a municipal corporation. Appellants' Br. at 13-14. We view this distinction to be immaterial. The Supreme Court viewed dimly any effort at public utility regulation other than that coming from the PUC. The Court cited to numerous cases involving townships to support its decision, including Duquesne Light Co. v. Upper St. Clair Township, 105 A.2d 287 (Pa. 1954). Cnty. of Chester, 218 A.2d at 332-33.

For these reasons we conclude that the concept of field preemption supports the trial court's decision here.

### b. Conflict Preemption

Even assuming that our Supreme Court's language of exclusion "from the same field" in Duquesne Light Co. v. Upper St. Clair Township was imprecise, for the following reasons we conclude that conflict preemption also supports the trial court's decision as to preemption by the Public Utility Code.

As stated above, conflict preemption requires an analysis of whether preemption is implied in or implicit from the text of the whole statute. Hoffman Mining, 32 A.3d at 594. Conflict preemption is a formalization of the self-evident principle that a municipal ordinance cannot be sustained to the extent it is contradictory to, or inconsistent with, a state statute. Id. Conflict preemption is applicable when the conflict between a local ordinance and a state statute is irreconcilable, i.e., when simultaneous compliance with both the local ordinance and the state statute is impossible. Id. In addition, under the doctrine of conflict preemption, a local ordinance will be invalidated if it stands as an obstacle to the execution of the full purposes and objectives of a statutory enactment of the General Assembly. Id. We focus on this last concept, an obstacle to the execution of the full purpose of the state statute.

After extensively evaluating the statutory terms, our Supreme Court in Duquesne Light Co. v. Upper St. Clair Township, and later in County of Chester, identified an over-arching policy embedded in our public utilities statutes: to commit

the regulation of public utility facilities to a state-wide commission, the PUC, because the rendition of efficient service to the public transcends the legitimate objectives of any one of the political subdivisions of the Commonwealth. Duquense Light Co. v. Upper St. Clair Township, 105 A.2d at 293; accord Cnty. of Chester, 218 A.2d at 333 ("If each county was to pronounce its own regulation and control over electric wires, pipe lines and oil lines, the conveyors of power and fuel could become so twisted and knotted as to affect adversely the welfare of the entire state.") (emphasis added).

More fully expressing the conflict between the policy of state-wide regulation versus local regulation of public utility services and facilities, the Court in Duquesne Light Co. v. Upper St. Clair Township, 105 A.2d at 293, stated (with emphasis added):

> We believe that the General Assembly never intended to bestow a power upon first class townships which is in headlong conflict with the power already given to the [PUC]. We believe that the General Assembly never gave any one of the political subdivisions through which the proposed line will pass the power to determine whether the public in another locality shall be served with electric energy, or the means by which they will be served.

The "headlong conflict" discussed by the Supreme Court, involves an "obstacle to the execution of the full purpose" of the Public Utility Code. Id.; see Hoffman Mining, 32 A.3d at 594. Indeed, contrary to the strong, long-standing policy of statewide regulation of public utility services and facilities, Plaintiffs specifically advocate for local regulation of the location of pipeline facilities here.

40

See, e.g., Appellants' Br. at 19 (arguing protection of environmental values is a quintessentially local issue and must be tailored to local concerns).

The practical conflict is even more apparent with a careful review of the facts here. Plaintiffs concede that the proposed route of the ME2 pipeline through the Township "follows an existing [Sunoco] hazardous liquids pipeline …." Compl. ¶7. In Sunoco I, it was revealed that the ME2 pipeline will be "paralleling and mostly within the existing right of way of the [ME1] pipeline." Id. at 1008 (emphasis added). Thus, the 2014 Ordinance, zoning pipelines out of residential zones, conflicts with full use of a pre-existing pipeline right of way.

We reject Plaintiffs' arguments that there is no conflict between the 2014 Ordinance and the Public Utility Code: a) because the PUC does not have any regulations governing pipeline location; b) because the PUC concedes it lacks authority over the siting of hazardous liquid pipelines; and, c) because the PUC lacks procedural machinery to adjudicate their rights.

First, while it may be true that the PUC has no regulations covering pipeline siting, this is irrelevant. The PUC exercises its authority in several ways, including regulations and orders. Regardless of whether there are PUC regulations governing the location of pipelines, there are numerous PUC orders governing the ME2 pipeline, as discussed in such detail in Sunoco I that further review is unnecessary.

Second, Plaintiffs do not acknowledge the manner in which the PUC regulates the ME2 pipeline. As established in Sunoco I, the PUC regulates the intrastate shipments of natural gas and petroleum products through pipelines, and not the actual physical pipelines conveying those liquids. Sunoco I, 143 A.3d at 1004. The PUC regulates these movements as pipeline transportation services. Id. If Sunoco concludes it is necessary to expand the previously certificated service, it is permitted to upgrade current facilities and expand existing capacity as needed. Id. at 1006; see also Duquesne Light Co. v. PUC (public utility company, in exercise of its managerial functions, may determine in first instance, type and extent of its service to public). Sunoco's decisions are subject to review by the PUC to determine whether Sunoco's service and facilities "are unreasonable, unsafe, inadequate, insufficient, or unreasonable discriminatory, or otherwise in violation of the Public Utility Code …." 66 Pa. C.S. §1505(a). In this manner, Sunoco's decisions as to the location of its facilities are within the jurisdiction of the PUC. Cnty. of Chester.

Third, the Public Utility Code's provisions afford Plaintiffs a forum for their rights, and reasonable notice and hearing, on complaint that the location of Sunoco's utility facilities are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of the Public Utility Code. 66 Pa. C.S. §§701 (entitled "Complaints"), 1505(a) (entitled "Proper service and facilities established on complaint"); see Hudson Railway.

### c. Ogontz and Statutory Interpretation

We reach the same conclusion by resorting to an analytical process our Supreme Court uses to determine which entity the legislature intended to have

42

preeminent powers over a given area of regulation. The conflict here is between the public utility regulatory authority of the PUC and the authority of the Township to enact zoning ordinances to promote the public health, safety, morals and general welfare.

The analytical process was originally set forth in Department of General Services v. Ogontz Area Neighbors Association, 483 A.2d 448 (Pa. 1984), and the process was recently applied again by the Court in City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1, 161 A.3d 160 (Pa. 2017), and in Southeastern Pennsylvania Transportation Authority v. City of Philadelphia, 101 A.3d 79 (Pa. 2014) (SEPTA). As the Supreme Court noted in SEPTA:

> In a series of cases beginning with our decision in *Ogontz, supra*, this Court has held that a Commonwealth agency's challenge to a municipality's exercise of authority over it does not represent 'a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state.' *See Ogontz, supra* at 452; *County of Venango v. Borough of Sugarcreek,* [626 A.2d 489, 490 (Pa. 1993)]; *Hazleton Area Sch. Dist. v. Zoning Hearing Bd.,* [778 A.2d 1205, 1210 (Pa. 2001)]. That is, because the legislature authorized the creation of both entities, and set the limits of each entity's authority, our task is to determine, through an examination of the relevant statutes, which entity the legislature intended to have preeminent powers. *Ogontz, supra* at 452. In short, '[t]he problem, essentially, is one of statutory interpretation.' *Id.* Our standard of review of such a question of statutory interpretation is de novo, and our scope of review is plenary. *Hazleton, supra* at 1213.

> As identified in *Hazleton*, our opinion in *Ogontz, supra* sets forth the analytical process a court is to follow to determine which entity the legislature intended to have preeminent powers over a given area of regulation.

43

> The first step requires the reviewing court to determine, through examination of the statutes, which governmental entity, if any, the General Assembly expressly intended to be preeminent. *Id.* In the event there is no such express legislative mandate, the second step requires the court 'to determine legislative intent as to which agency is to prevail…turn[ing] to the statutory construction rule that legislative intent may be determined by a consideration, *inter alia*, of the consequences of a particular interpretation.' *Hazleton, supra* at 1210, (quoting *Ogontz,* supra at 455 (citing in turn 1 Pa.C.S. § 1921 (c)(6)) (emphasis omitted).

SEPTA, 101 A.3d at 86.

There is no express preemption provision in either the Public Utility Code or in the MPC. Nevertheless, our prior discussion explains the long-standing public policy embedded in the Public Utility Code and its predecessor statutes: public utilities are to be regulated by an agency of the Commonwealth with state-wide jurisdiction rather than a myriad of local governments with different regulations.

In contrast, the General Assembly placed two provisions in the MPC which impact our analysis. The first, Section 619, entitled "Exemptions," provides (with emphasis added):

> This article shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the [PUC] shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or

> welfare of the public. It shall be the responsibility of the [PUC] to ensure that both the corporation and the municipality in which the building or proposed building is located have notice of the hearing and are granted an opportunity to appear, present witnesses, cross-examine witnesses presented by other parties and otherwise exercise the rights of a party to the proceedings.

53 P.S. §10619. Our Supreme Court holds that this provision does not grant municipalities an implied right to zone with regard to public utility facilities other than described buildings. Duquesne Light Co. v. Upper St. Clair Township; see Hudson Railway.

The second provision, Section 1202 of the MPC, entitled "General Repeal," provides in pertinent part that "this act shall not repeal or modify any of the provisions of 66 Pa.C.S. Pt. I (relating to public utility code) …." A similar provision has existed since 1931 in the First Class Township Law addressed by the Supreme Court in Duquesne Light Co. v. Upper St. Clair Township. See also S. Coventry Twp.

These provisions of the MPC, viewed in contrast to the provisions of the Public Utility Code, support a determination that the General Assembly intended the PUC to be preeminent in regulation of public utilities when questions arise about local zoning, absent an express grant of authority to a local municipality. Duquesne Light Co. v. Monroeville Borough (where conflict between Public Utility Code and express grant of authority to a borough, the borough may define reasonable underground wiring district, but the PUC has ultimate authority to determine particulars of implementation); Cnty. of Chester; Duquesne Light Co. v. Upper St. Clair Township. Any other conclusion could prevent the PUC from compelling a

45

public utility to render adequate and efficient service, or in anywise control the expansion or extension of the utility's facilities. Duquesne Light Co. v. Upper St. Clair Township, 105 A.2d at 293.

### d. Township's Authority to Regulate under MPC

Plaintiffs repeatedly state that they do not rely upon Section 619 of the MPC (referring to certain buildings used by a public utility corporation), for an implied grant of authority to zone out the ME2 pipeline. E.g., Appellants' Br. at 9, 23. Therefore, further discussion of this provision is not needed here.

### e. Township's Constitutional Duty as Trustee under ERA

For the following reasons, we decline to embrace Plaintiffs' arguments based on the Township's constitutional duties to protect public natural resources, as embodied in the ERA and discussed recently by our Supreme Court in Robinson Township II and PEDF.

First and foremost, the cases relied upon by Plaintiffs do not deal with public utility services and facilities regulated by the PUC, and they are distinguishable for this important reason. We are not persuaded that the cases signify an intent to protect public natural resources trumps all other legal concerns raised by every type of party under all circumstances. Plaintiffs, however, offer no principled contours for their broad argument.

Second, Plaintiffs do not explain how the ERA, Article I, Section 27 of the Pennsylvania Constitution, adopted in 1971, impacts long-standing, pre-existing

46

law involving regulation of public utilities, without expressly referring to the topic. Similarly, Plaintiffs do not explain how the 2014 Ordinance impacts long-standing, pre-existing law involving regulation of public utilities. The cases Plaintiffs rely upon dealt with very recent General Assembly enactments, unlike the current situation involving state-wide public utility statutes dating to 1913. Thus, the cases are distinguishable for this additional important reason. Stated differently, Plaintiffs ignore the comparative timing of the onset of legal duties, although such timing is usually a matter of significance to legal analysis. See Duquesne Light Co. v. Monroeville Borough (evaluating which statutory enactment predates the other); Duquesne Light Co. v. Upper St. Clair Township, 105 A.2d at 291 ("long before first class townships ever acquired any zoning powers, the General Assembly had clearly expressed the policy of the Commonwealth to commit the regulation of public utilities to a commission of state-wide jurisdiction ….").

Third, Plaintiffs do not explain how the 2014 Ordinance furthers the Township's ERA trustee duties and relates to conserving public natural resources. This is especially true where, as here, the pipeline in question will be placed in or near a pre-existing pipeline right of way and parallel to a pre-existing pipeline.[13]

### C. Substantive Due Process
### 1. Contentions

Plaintiffs further argue the trial court erred when it determined Plaintiffs did not establish a claim based on substantive due process. In dismissing

---

[13] The parties do not address whether the impact of the 2014 Ordinance on the pre-existing pipeline and its right of way works a compensable regulatory taking. See Muir v. Wisconsin, ___ U.S. ___, 137 S. Ct. 1933 (2017), 2017 WL 2694699. In the absence of a discussion by the parties, we will not address the issue on our own motion.

their substantive due process claim, Plaintiffs assert, the trial court relied on its conclusion that the PUC's authority purportedly preempts the Township's ability to regulate the location of HVL pipelines in residential districts. For the reasons set forth above, Plaintiffs contend, this Court should find Sunoco failed to comply with the zoning ordinance, to which its activities are subject. Plaintiffs argue this Court should find such non-compliance constitutes a violation of Plaintiffs' substantive due process rights.

Plaintiffs assert the very essence of zoning is the designation of certain areas for different use purposes. Swade. Under its well-established authority, Plaintiffs argue, the Township limited the industrial pipeline activities that can occur in a residential district. Plaintiffs contend Sunoco is blatantly ignoring the residential zoning district limitations that the Township determined were appropriate for HVL or gas pipelines, and engaging in such uses in all districts, including residential districts, without restriction. Plaintiffs assert not only does such action fail to protect the reciprocal property rights of neighbors, it knowingly impedes on those rights.

Plaintiffs argue it is irrational to have incompatible land uses in a zone that was established to achieve a non-industrial character and non-industrial development and conservation goals. Robinson Twp. I; see also Robinson Twp. II (Baer, J., concurring). Such incompatible uses upset the established expectations of those who live there, such as investment decisions regarding businesses and homes on the assurance that the zoning district will only be developed for compatible uses. See Robinson Twp. II (Baer, J., concurring). Plaintiffs assert that Sunoco's

placement of an HVL pipeline in residential districts renders the zoning districts irrational and unconstitutional.

Sunoco counters that the trial court correctly held that Plaintiffs failed to state a substantive due process claim. Sunoco asserts Plaintiffs' sole allegation in support of their claim for the purported violation of substantive due process is that recognizing Sunoco's exemption from the zoning ordinance would "create irrational zoning in [the Township]." R.R. at 29a-30a. However, Sunoco argues, preemption does not "create" zoning; rather, it merely prevents municipalities from applying their ordinances against public utilities. Sunoco contends the zoning ordinances that are preempted as applied to public utilities still exist and are applicable to other entities that are not public utilities.

Moreover, Sunoco argues, Plaintiffs' substantive due process claim appears to be based on the Township's failure to enjoin Sunoco's non-compliance with its zoning ordinance rather than on any action by Sunoco or any enacted legislation. R.R. at 31a.

Contrary to these assertions, Sunoco argues, Plaintiffs may not seek relief against the Township for failing to enforce the zoning ordinance against Sunoco under Section 617 of the MPC. See Buffalini ex rel. Buffalini v. Shrader, 535 A.2d 684, 68-887 (Pa. Cmwlth. 1987) (Section 617 allows a municipality "to enforce its ordinances under the conditions set out in the statute but its permissive language does not mandate that enforcement in all circumstances").

49

Sunoco maintains that, to the extent Plaintiffs base their substantive due process claim on a challenge to the longstanding law that the PUC's exclusive jurisdiction over public utilities preempts local zoning and land use ordinances, Plaintiffs still cannot succeed. By vesting the PUC with exclusive jurisdiction over public utilities and their facilities through the Public Utility Code, Sunoco argues, the General Assembly allowed the Commonwealth's citizens to benefit by having access to public utility services.

Sunoco asserts the Public Utility Code does not violate substantive due process by preempting local zoning and land use regulations; therefore, Plaintiffs fail to state a claim upon which relief can be granted based on substantive due process.

In reply, Plaintiffs argue that, contrary to Sunoco's contentions, a state law that permits industrial activity in every zoning district in every municipality, such as Sunoco's interpretation of the Public Utility Code, violates substantive due process because it results in irrational zoning. Robinson Twp. I; see also Robinson Twp. II (Baer, J., concurring).

Plaintiffs also dispute Sunoco's argument that Plaintiffs' substantive due process claim is based on the Township's failure to enjoin Sunoco's non-compliance with its zoning ordinance rather than on any action of Sunoco. Plaintiffs recognize that the Township need not enforce its zoning ordinance; therefore, Plaintiffs brought this action themselves under Section 617 of the MPC. Plaintiffs

maintain their claims are based on Sunoco's failure to conform to the zoning ordinance. <u>See</u>, <u>e.g.</u>, Compl. at ¶¶92, 110.

## 2. Analysis

We begin our discussion by noting that Plaintiffs' substantive due process argument of irrational zoning based on the allowance of incompatible uses in residential zones relies almost entirely on this Court's superseded decision in <u>Robinson Township I</u> and Justice Baer's concurring opinion in <u>Robinson Township II</u>.

Nevertheless, Plaintiffs' incompatible-uses-in-residential-zones argument is flawed, for several reasons.

A substantive due process issue usually arises as a substantive validity challenge to a legislative enactment. <u>See</u>, <u>e.g.</u>, <u>Surrick v. Zoning Hearing Board of Upper Providence Twp.</u>, 382 A.2d 105 (Pa. 1977) (exclusionary zoning; zoning ordinance must bear a substantial relationship to the health, safety, welfare and general morals of the community). In the broadest sense, such challenges question the sufficiency of the relationship between the goals of the legislative enactment and the means used to achieve them. <u>See</u> <u>Boundary Drive Assocs. v. Shrewsbury Twp.</u>, 491 A.2d 86 (Pa. 1985) (zoning goal of agricultural preservation; restrictions on number of dwellings per acre); <u>Surrick</u>; <u>see also</u> 1 Robert S. Ryan PENNSYLVANIA ZONING LAW AND PRACTICE §3.1.3 (2005) (validity issues bottomed on an appraisal of the result imposed by the zoning limitation as measured against the proper function and objectives of zoning itself). Similarly, in the <u>Robinson Township</u>

51

opinions on which Plaintiffs rely, a substantive validity issue arose with regard to a recent enactment of the General Assembly.

Here, however, Plaintiffs do not challenge a legislative enactment at all. Instead, they challenge Sunoco's decision not to comply with the 2014 Ordinance. E.g., Reply Br. of Appellants at 18-19. This is a novel, perhaps illogical, extension of a substantive due process analysis from applying to a legislative enactment to applying to non-governmental action. It is the proverbial square peg in the round hole. Because of this conceptual distortion, the Robinson Township opinions are distinguishable, and they do not support the Plaintiffs' claims here.

Moreover, there are factual problems. According to Plaintiffs' complaint, public utility facilities were until recently permitted by right in residential zones of the Township. See Compl. at ¶11 ("Under the [2014] Ordinance a public utility facility use is permitted by conditional use, and no longer permitted by right in residential districts."). In any event, there is a pre-existing pipeline in the Township. See Compl. at ¶7. As revealed in Sunoco I, most of the new ME2 pipeline will be parallel to and within the right-of-way of the pre-existing pipeline. Sunoco I, 143 A.3d at 1009. These facts are at odds with Plaintiffs' general assertions of incompatible uses.

Further, as to expectations of property owners, the onset of regulation by the 2014 Ordinance post-dates the expectations of the public utility when it acquired the right of way and constructed the pre-existing pipeline. Also, it is difficult to assess the "pipeline-free" expectations of homeowners in the residential

52

zones in light of the pre-existing pipeline and right of way. Although Plaintiffs argue about established expectations of those living in the residential zones, Appellants' Br. at 26, Plaintiffs Casey and Grote do not aver that they purchased their properties after enactment of the 2014 Ordinance, that they somehow relied upon the 2014 Ordinance, or that they expected no public utility facility in their residential zones. These factual circumstances raise questions of the viability of Plaintiffs' substantive due process claim.

Given the conceptual distortion and the factual problems, together with our prior conclusion that the Township lacked authority to zone out a public utility service and facility regulated by the PUC, we discern no error in the trial court's disposition of this issue.

## D. Other Issues

The parties also argue about subject matter jurisdiction in the trial court, denial of injunctive relief, standing of the Plaintiffs, and application of the federal Pipeline Safety Act, 49 U.S.C. §60101-60137. In light of our prior holdings, these issues are moot, and no further discussion is necessary.

## IV. Conclusion

We hold that the Plaintiffs cannot state a cause of action to have the 2014 Ordinance applied to Sunoco's ME2 pipeline, which is regulated by the PUC

53

as a public utility service and facility. Accordingly, we affirm the trial court's dismissal of Plaintiffs' suit and denial of requests for injunctive relief.

_____
ROBERT SIMPSON, Judge

Judge McCullough dissents.

Judge Fizzano Cannon did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Delaware Riverkeeper Network,   :
Maya van Rossum, The Delaware   :
Riverkeeper, Thomas Casey, and   :
Eric Grote,   :    No. 952 C.D. 2017
               Appellants   :
  :
         v.   :
  :
Sunoco Pipeline L.P.   :

# O R D E R

**AND NOW**, this 20th day of February, 2018, the orders of the Court of Common Pleas of Chester County are **AFFIRMED**.

 

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Delaware Riverkeeper Network,    :
Maya van Rossum, The Delaware    :
Riverkeeper, Thomas Casey, and    :
Eric Grote,    :
              Appellants    :
    :
    v.    :  No. 952 C.D. 2017
    :  Argued: October 18, 2017
Sunoco Pipeline L.P.    :

**BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge**
                **HONORABLE RENÉE COHN JUBELIRER, Judge**
                **HONORABLE ROBERT SIMPSON, Judge**
                **HONORABLE P. KEVIN BROBSON, Judge**
                **HONORABLE PATRICIA A. McCULLOUGH, Judge**
                **HONORABLE ANNE E. COVEY, Judge**
                **HONORABLE MICHAEL H. WOJCIK, Judge**

**CONCURRING AND DISSENTING**
**OPINION BY JUDGE BROBSON**          **FILED: February 20, 2018**

The majority's analysis of the issues on appeal is thorough, cogent, and consistent with long-standing precedent. Despite my well-documented misgivings about whether Pennsylvanians are the primary and paramount beneficiaries of the Mariner East 2 (ME2) Pipeline,[1] I must concede that the issue, for now, has been settled in Sunoco Pipeline, L.P.'s favor. Accordingly, I join in the majority's decision with respect to the merits.

I am compelled, however, to disagree with the majority's decision to affirm the dismissal of the complaint. Appellants The Delaware Riverkeeper

---

[1] *In re Sunoco Pipeline, L.P.*, 143 A.3d 1000, 1020-28 (Pa. Cmwlth.) (Brobson, J., dissenting), *appeal denied*, 164 A.3d 485 (Pa. 2016).

Network, Maya van Rossum, The Delaware Riverkeeper, and landowners Thomas Casey and Eric Grote (collectively, Plaintiffs) commenced their action in the Court of Common Pleas of Chester County (common pleas), essentially challenging *the location* of the ME2 Pipeline within West Goshen Township. Rather than dismiss that challenge, I would order common pleas on remand to transfer the complaint to the Public Utility Commission (PUC) pursuant to Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a) (relating to transfers of erroneously filed matters).[2] The PUC can then consider Plaintiffs' challenges in light of its authority under Section 1505(a) of the Public Utility Code, 66 Pa. C.S. § 1505(a).[3]

I confess that Plaintiffs have not asked for this relief. Nonetheless, I am moved by what appears to be an undisputed fact that no governmental entity has ever reviewed, let alone approved, the location of the ME2 Pipeline. There is no

___

[2] Section 5103(a) of the Judicial Code provides:

(a)    General rule.--If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge *shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth*, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth.

(Emphasis added.)

[3] As the majority notes, Section 1505(a) of the Public Utility Code provides:

(a)    General rule.--Whenever the commission, after reasonable notice and hearing, upon its own motion or upon complaint, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this part, the commission shall determine and prescribe, by regulation or order, the reasonable, safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public.

specific statute and regulation that limits, let alone guides, Sunoco Pipeline, L.P.'s discretion to choose the location of the ME2 Pipeline. This pipeline, however, is currently in construction. Here, the majority acknowledges that Plaintiffs have a remedy before the PUC with respect to their challenge to the location of the ME2 Pipeline. (Maj. Op. at 19.) In this case, where private property rights and interests are at stake, I would not exalt form over substance. Plaintiffs clearly have a right to be heard, and the PUC, as the statewide agency with jurisdiction, has a duty to address their challenges (indeed, any challenges) to the location of the ME2 Pipeline. Rather than dismiss, I would order a transfer of the matter to the PUC, where Plaintiffs can advance their challenge to the location of the ME2 Pipeline in West Goshen Township, and the PUC can either approve or disapprove the location under Section 1505(a) of the Public Utility Code. *See County of Erie v. Verizon N., Inc.*, 879 A.2d 357, 365 (Pa. Cmwlth. 2005) (holding remand for purposes of transfer was necessary because PUC had primary jurisdiction over county's claim against telephone service provider, and trial court erred under Section 5103(a) of Judicial Code in dismissing matter without prejudice rather than transferring it to PUC).


_____
P. KEVIN BROBSON, Judge

Judge McCullough joins in this concurring and dissenting opinion.