# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug Lorenzen, Pamela Bishop, : 
Phillip J. Stober, and Concerned : 
Citizens of Lebanon County : 
  : 
  : 
v. : No. 851 C.D. 2018
  : Argued: September 10, 2019
West Cornwall Township : 
Zoning Hearing Board and : 
Sunoco Pipeline, L.P. : 
  : 
Appeal of: Doug Lorenzen, : 
Pamela Bishop, Phillip J. Stober, : 
and Concerned Citizens of : 
Lebanon County : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE BROBSON       FILED:  October 23, 2019

Doug Lorenzen, Pamela Bishop, Phillip J. Stober, and Concerned Citizens of Lebanon County (Association) (collectively, Appellants) appeal from an order of the Court of Common Pleas of Lebanon County (common pleas), which affirmed a decision of the West Cornwall Township (Township) Zoning Hearing Board (Board). We now reverse.

## I. BACKGROUND

As background, in 2012, Sunoco Pipeline, LP (Sunoco) announced its intent to develop the Mariner East Project (ME Project). The ME Project is "an integrated pipeline system for transporting petroleum products and natural gas

liquids (NGLs) such as propane, ethane, and butane from the Marcellus and Utica Shales in Pennsylvania, West Virginia, and Ohio to the Marcus Hook Industrial Complex (MHIC) and points in between." *Del. Riverkeeper Network v. Sunoco Pipeline, L.P.*, 179 A.3d 670, 674 (Pa. Cmwlth.) (en banc), *appeal denied*, 192 A.3d 1106 (Pa. 2018). The ME Project consists of two main phases: (1) Mariner East 1 pipeline (ME1), which utilizes Sunoco's existing pipeline infrastructure along with an extension; and (2) Mariner East 2 pipeline (ME2), which requires construction of a new 351-mile pipeline, largely in the existing right-of-way of ME1. *Id.*

On March 21, 2014, Sunoco filed 31 petitions with the Pennsylvania Public Utility Commission (PUC), naming 31 municipalities, including the Township. Through the petitions, filed pursuant to Section 619 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10619, Sunoco sought an exemption from local zoning requirements for various buildings that Sunoco had constructed or sought to construct in connection with its repurposing of ME1 to carry NGLs.[1] In the petitions, Sunoco represented that its ME1 would offer interstate service. During the course of proceedings, the PUC indicated that there was a presumption that Sunoco was a public utility based

_____

[1] Section 619 of the MPC provides:

[Article VI of the MPC, 53 P.S. §§ 10601-10621, pertaining to Zoning,] shall not apply to any existing or proposed building, or extension thereof, used or to be used by a public utility corporation, if, upon petition of the corporation, the [PUC] shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public. It shall be the responsibility of the [PUC] to ensure that both the corporation and the municipality in which the building or proposed building is located have notice of the hearing and are granted an opportunity to appear, present witnesses, cross-examine witnesses presented by other parties and otherwise exercise the rights of a party to the proceedings.

on prior filings. The PUC directed the Office of Administrative Law Judges to hold hearings as required by Section 619 of the MPC, so that the PUC could make a determination as to whether Sunoco was exempt from local zoning requirements with regard to ME1. On March 5, 2015, Sunoco withdrew all 31 petitions, stating that it no longer needed PUC exemption from zoning requirements because it either had obtained local zoning approval through the municipalities or would obtain such approval, thus rendering the petitions moot. As a result of Sunoco's withdrawal of the petitions, the PUC never issued a final decision on whether Sunoco is a public utility corporation with regard to ME1 and whether the repurposing of ME1 for transporting NGLs constituted a public utility service.

On May 7, 2015, subsequent to Sunoco's withdrawal of the permits before the PUC, the Lebanon County Planning Department (Planning Department), as the zoning officer of the Township, issued Sunoco a zoning permit (Permit) for "accessory support and maintenance structures" (Structures) for a pump station (Pump Station) and power distribution center (Power Distribution Center) located at Route 322, 370 Horseshoe Pike, West Cornwall Township, Lebanon, Pennsylvania (Site), and used by Sunoco as part of ME1. The Site contains 14.14 acres and includes a segment of ME1. The Site is located in the Township's M-Manufacturing District ("M District"), which permits manufacturing and processing only by approval for conditional use. The Permit allows the Structures to be erected on the Site, described in the Permit as "unmanned accessory support and maintenance structures, under Section 27-1722" of the Township's zoning ordinance (Zoning Ordinance), which the Permit refers to as a "Public Utilities Exemption." (Reproduced Record (R.R.) at 31a.) Basically, Sunoco built the Structures around the already-existing Pump Station and Power Distribution Center to protect its

3

equipment and decrease noise. The Planning Department purportedly issued the Permit pursuant to Section 27-1722 of the Zoning Ordinance. The Planning Department did so without requiring Sunoco to submit an application for conditional use approval and without a hearing or any other municipal review. Although the Permit sought to "erect" the Structures, Sunoco had actually constructed the Structures eight months prior to the issuance of the Permit.

Appellants appealed the Permit on June 5, 2015, to the Board, disputing that Sunoco had established that it was a public utility entitled to an exemption and challenging the issuance of the Permit without a review of the environmental, health, and safety impacts of the Permit as allegedly required by Section 27-1503 of the Zoning Ordinance and Article I, Section 27 of the Pennsylvania Constitution, known as the Environmental Rights Amendment. The Board conducted a hearing on September 15, 2015, at which Sunoco asserted that Appellants did not have standing. As a result, the Board limited the hearing to the issue of standing. Thereafter, the Board dismissed the appeal, having determined that Sunoco is a public utility for purposes of Section 27-1722 of the Zoning Ordinance, thereby entitling it to an exemption from zoning requirements, and that Appellants lacked standing.

Appellants appealed to common pleas, and Sunoco intervened. Appellants argued that the Board incorrectly based its determination that Sunoco is a public utility entitled to an exemption under Section 27-1722 of the Zoning Ordinance on the PUC's general recognition of Sunoco as a public utility through the PUC's issuance of a certificate of public convenience. Appellants alleged that, as a result of that premature determination, the Board wrongly denied Appellants standing. Appellants contend that, instead, the Board should have permitted them to present evidence that Sunoco was not entitled to the exemption. By order dated

4

November 21, 2016, common pleas reversed the Board's decision and remanded the matter for further proceedings. Common pleas directed the Board to take evidence of and consider the factors necessary to establish whether Sunoco is a public utility entitled to an exemption under Section 27-1722 of the Zoning Ordinance as set forth in *Crown Communications v. Zoning Hearing Board of the Borough of Glenfield*, 705 A.2d 427 (Pa. 1997).[2] *Lorenzen v. W. Cornwall Twp. Zoning Hearing Bd.,* Lebanon County Legal J. (C.P. Pa., No. 2015-02106, filed November 21, 2016)[3] (*Lorenzen I*); (Appellant's Br. at Exhibit 2.)

On remand, the Board conducted hearings and issued a decision, dated August 23, 2017. The Board concluded: (1) for purposes of ME1, Sunoco is a public utility under Section 27-1722 of the Zoning Ordinance, thereby exempting it from Township zoning requirements for accessory support and maintenance structures and buildings not requiring human occupancy; (2) the Planning Department properly issued the Permit; and (3) Appellants lacked standing in the matter. Appellants appealed to common pleas, and common pleas affirmed.

---

[2] In *Crown Communications*, we held:

> [W]hen zoning ordinances fail to define the term "public utilities," the term shall be understood to mean any business activity regulated by a government agency in which the business is required by law to: 1) serve all members of the public upon reasonable request; 2) charge just and reasonable rates subject to review by a regulatory body; 3) file tariffs specifying all of its charges; and 4) modify or discontinue its service only with the approval of the regulatory agency.

*Crown Commc'ns*, 705 A.2d at 431-32.

[3] The online edition of the Lebanon County Legal Journal, which is the official legal periodical and court reporter for Lebanon County, contains a copy of common pleas' opinion in *Lorenzen I* at http://lebanoncountylegaljournal.org/lorenzen-bishop-stober-and-concerned-citizens-of-lebanon-county-v-west-cornwall-township-zoning-hearing-board-v-sunoco-pipeline-l-p-no-2015-02106/ (last visited 10/09/2019).

## II. ISSUES ON APPEAL

On appeal to this Court,[4] Appellants maintain that the Board erred in concluding that Sunoco's business activity involving the repurposing of ME1 to convey NGLs qualified Sunoco for exemption under Section 27-1722 of the Zoning Ordinance. More specifically, Appellants argue that the Board erred as a matter of law or abused its discretion because it based its decision under the Zoning Ordinance on the misconceived notion that Sunoco's use of ME1 necessarily meets the test for a public utility given that Sunoco is a public utility under the Public Utility Code.[5] Rather, Appellants contend that the Board was required to apply the test for a public utility under *Crown Communications* and that Sunoco's use of ME1 does not meet that test because 90% of the capacity of ME1 is reserved for interstate transportation of NGLs by three shippers subject to privately negotiated and unknown rates and, therefore, does not serve the public or charge rates subject to review by a regulatory body. Appellants argue that, because Sunoco does not meet the test under *Crown Communications*, the Board erred by not requiring Sunoco to apply for and receive conditional use approval for its accessory support and maintenance structures and by not requiring the Planning Department to consider the environmental impacts of the Permit. Appellants also argue that the Board erred in concluding that the Planning Department properly issued the permit where the local municipality never inquired into the environmental impacts of the Permit as required by Article I, Section 27 of the Pennsylvania Constitution, often referred to as the Environmental Rights Amendment. Finally, Appellants argue that the Board erred in concluding

---

[4] Where common pleas takes no additional evidence in an appeal from a decision of the Board, this Court is limited to considering whether the Board erred as a matter of law or abused its discretion. *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011).

[5] 66 Pa. C.S. §§ 101-3316.

that they lacked standing; they maintain that they have standing based on what they characterize as the dangerous use of ME1 to transport highly volatile NGLs as it relates to their specific properties.

Upon review of the parties' briefs, the Court directed the parties to file supplemental briefs, further addressing the following two issues:

> 1. Whether Section 27-1722 of the Zoning Ordinance provides for an independent "public utility exemption" from the Zoning Ordinance, as presented by the parties, or, instead, should be read as limiting (or prescribing), "[f]or purposes of this Chapter," the *extent* of "public utility exemption*s*," such as the exemption set forth in Section 619 of the MPC?

> 2. Whether the Appellants' challenge in this matter encompasses the equipment housed in the structures on the property, and, if so, how the presence of that equipment violates, if at all, the Zoning Ordinance?

## III. DISCUSSION

At the outset, we note that the issues on appeal do not affect the legality of Sunoco's general operation of ME1 at this Site. Rather, the issues relate only to the accessory support and maintenance structures erected on the Site by Sunoco to protect equipment and reduce noise.

### A. Standing

We will first address the threshold question of standing. Here, Appellants appealed the Board's grant of the Permit based on two general grounds: (1) the Board erred in concluding that the Planning Department properly granted the Permit pursuant to the Zoning Ordinance because Sunoco cannot meet the test for a public utility under *Crown Communications*; and (2) the Planning Department's grant of the Permit resulted in a violation of Article I, Section 27 of the Pennsylvania Constitution, because the municipality did not consider the environmental impacts

7

of the Permit.    A challenge to a party's standing raises a question of law subject to this Court's plenary, *de novo* review.  *Ams. for Fair Treatment, Inc. v. Phila. Fed'n of Teachers*, 150 A.3d 528, 533 n.2 (Pa. Cmwlth. 2016).

In the zoning challenge context, this Court has explained standing as follows:

> A person who wishes to contest a zoning approval can initiate an appeal or challenge if he is a "person aggrieved."    Section 913.3 of the MPC[, 53 P.S. § 10913.3, added by the Act of December 21, 1988, P.L. 1329].  To establish "aggrieved" status for purposes of standing, a party must have a substantial, direct, and immediate interest in the claim sought to be litigated. *Laughman v. Zoning Hearing Bd. of Newberry Twp.*, 964 A.2d 19 (Pa. Cmwlth. 2009).  In order to have a substantial interest, there must be some discernible adverse [e]ffect to some interest other than the abstract interest of all citizens in having others comply with the law.    *Pilchesky v. Doherty*, 941 A.2d 95 (Pa. Cmwlth. 2008).  The interest must be immediate and not a remote consequence of the judgment.  *Id.*  A person has standing where he has suffered or will suffer "injury in fact" and the interest he seeks to protect is arguably within the zone of interest sought to be protected or regulated by the statute or constitutional guarantee in question. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, . . . 346 A.2d 269 ([Pa.] 1975).  Aesthetic evaluation cannot be equated with a substantial interest in the issuance of a zoning permit.  *Miller v. Upper Allen Twp. Zoning Hearing Bd.*, . . . 535 A.2d 1195 ([Pa.] 1987).  An objector who is located in close proximity to the land involved in a zoning application normally has standing to contest the application.  *Active Amusement Co. v. Zoning Bd. of Adjustment*, 479 A.2d 697 ([Pa. Cmwlth.] 1984).

*In re Broad Mountain Dev. Co., LLC*, 17 A.3d 434, 440 (Pa. Cmwlth.), *appeal denied*, 24 A.3d 864 (Pa. 2011) (footnote omitted).  The proximity necessary to confer standing varies depending on the land use at issue.  *Armstead v. Zoning Bd.*

8

*of Adjustment of City of Phila.*, 115 A.3d 390, 403 (Pa. Cmwlth.) (Pellegrini, J., concurring) ("[W]here the use has been intensive and its effect emanates off the property, [courts] have held that property owners who live well over a mile away have standing."), *appeal denied*, 129 A.3d 1244 (Pa. 2015); *see also Broad Mountain*, 17 A.3d at 440-41 (holding that property owners who resided 1½ miles from proposed wind turbines had standing based on testimony concerning possible fires, health problems, incidents of flickering, and low frequency vibrations); *Grant v. Zoning Hearing Bd. of the Twp. of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001) (holding that property owners who resided 1¼ miles from proposed electric generating facility had standing where "wind and sound from proposed site flow to their land").

In the context of a claim under the Environmental Rights Amendment, in *Clean Air Council v. Sunoco Pipeline, L.P.*, 185 A.3d 478 (Pa. Cmwlth. 2018) (en banc), *appeal denied*, 198 A.3d 1051 (Pa. 2018), a matter involving challenges to the *construction of ME2*, we explained standing as follows:

> On the question of standing to bring a claim under the Environmental Rights Amendment, we look to the Pennsylvania Supreme Court's decision in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp. II* ). There, the Pennsylvania Supreme Court held that property owners within a zoning district had standing to bring an Environmental Rights Amendment claim based upon "the serious risk of alteration in the physical nature of their respective political subdivisions and the components of their surrounding environment." *Robinson Twp. II*, 83 A.3d at 922. Here, even if they are not actual condemnees, [the plaintiffs] allege in the [c]omplaint that the Mariner East Project is either on or in close proximity to their property. They assert that the project poses an increased risk of spills or explosions that would impair their property. . . . Consistent with the Pennsylvania Supreme Court's

9

> decision in *Robinson Twp. II*, this Court is satisfied that [the plaintiffs] have asserted an interest sufficient to support their standing to assert their Environmental Rights Amendment claim against Sunoco. Concomitantly, Clean Air Council also has standing. *Robinson Twp. II*, 83 A.3d at 922 ("Under Pennsylvania law, an association has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged.").

*Clean Air Council*, 185 A.2d at 495.

Furthermore, "[a]ssociations have standing to sue on behalf of their members if they allege that at least one of their members has or will suffer a 'direct, immediate and substantial injury' to an interest as a result of the challenged action." *Citizens for State Hosp. v. Cmwlth.*, 553 A.2d 496, 498-99 (Pa. Cmwlth. 1989) (quoting *Pa. Gamefowl Breeders Ass'n v. Cmwlth.*, 533 A.2d 838, 840 (Pa. Cmwlth. 1987)), *aff'd*, 600 A.2d 949 (Pa.), *cert. denied*, 506 U.S. 873 (1992).

Appellants contend that the Board erred in concluding that they lacked standing, because "[t]he use at the [S]ite involves placing highly-explosive NGLs under high pressure, which could result in explosions, fires, and loud noises directly affecting property owners within one to two miles of the Site."   (Appellants' Br. at 51.)  Individual Appellants argue they have standing to appeal the Permit because they live within approximately one-half mile and one mile of the Site and have been or may be endangered and adversely impacted by the use on the Site.   The Association maintains that it has standing by virtue of the standing of its members. Appellants argue that the Board wrongfully focused its analysis on the Structures only and failed to consider the use.  In so doing, the Board did not account for the fact that, in the event of an explosion at the Site, the Structures could be ejected and launched for a half mile, thereby potentially impacting two members of the

10

Association, and that an explosion could impact properties two to three miles away, thereby impacting a third member of the Association in addition to the other two members. For these reasons, Appellants contend that they demonstrated a particular harm to their properties as a result of the issuance of the Permit, and the harm is greater to them than to other citizens in the municipality.

In support of their position, Appellants point to the expert testimony of Rich Raiders, whom the Board qualified and accepted as an expert regarding safety, environmental, and other risk with respect to pipelines, pump stations, and other accessory structures for the transmission of NGLs. Mr. Raiders testified as to how Appellants' properties would be directly affected by the use of Sunoco's Pump Station and Power Distribution Center. He also testified that the NGLs ethane and propane have the potential to explode in their vapor form and that trees and other objects, including pieces of the Structures, could become projectiles within a quarter-mile to half-mile radius. (R.R. at 92a-93a.) He further testified that, if a cloud explosion were to occur, windows in a two- to three-mile range could be impacted. (Id. at 93a.) Furthermore, in terms of noise, Mr. Raiders testified that residents as far away as two miles could probably hear noise from the Pump Station, and the noise would be louder if the Pump Station threw a bearing and during a hydrostatic test.[6]

Appellants also point to the testimony of members of the Association. Dr. Ron Boogaard testified that he lives one-quarter to one-half mile from the Pump Station, and he is concerned that a leak of NGLs could cause the NGLs to travel onto

---

[6] It is not lost on the Court that, despite Mr. Raiders' discussion of noise levels generated by the Pump Station, the Structures erected on the Site serve dual functions—*i.e.*, protecting the equipment on the Site and decreasing the noise emission from the Site. If Sunoco were to remove the Structures, presumably the noise from the Site would become louder.

11

his property in a ravine and explode, destroying his home. He is also concerned that NGLs could pool within the Structures and could "become like a gasoline bomb." (R.R. at 184a.) Sandy Tshudy testified that she resides approximately one-quarter to one-half mile away from the Pump Station and is similarly concerned that an explosion could send pieces of the Structures onto her home and property. Dr. Boogaard and Ms. Tshudy also testified to hearing loud noises from the Site on one occasion when Sunoco cleared out or released pressure in ME1. Charles Henry testified that he resides approximately one mile from the Pump Station, and he and his wife are concerned that the emissions from the Pump Station could affect his wife's asthma. He is also concerned that an explosion could cause the Structures to land on his property and that the NGLs are not infused with an odor agent to provide warning when there is a leak. They all testified that their concerns are greater than the average citizen due to their proximity to the Site.

Sunoco disputes that the Board erred in determining that Appellants lacked standing. Sunoco contends that Appellants are not in sufficient proximity to establish standing, and they did not establish any direct injury that will result from the Structures. Sunoco observes that most of the concerns lodged by Appellants related to the operation of ME1 itself and not the Structures. As to Appellants' testimony that, in the event of an explosion of ME1, the Structures might land on their property, Sunoco contends that this objection is based on the operation of ME1 and the Pump Station, not the Structures. The operation of ME1 and the Pump Station are not the subject of the Permit now before the Court; rather, only the erection of the Structures is at issue. Moreover, Sunoco maintains that Appellants did not introduce any evidence to establish that debris from any theoretical explosion would travel onto their properties.

12

The Board, in support of its determination that Appellants lacked standing, also largely focuses on Appellants' lack of proximity and failure to connect potential harm to their property different than that of the average citizen with regard to the existence of the Structures as opposed to ME1 or the Pump Station.[7]

We agree with Sunoco that our consideration of the facts for purposes of standing in this matter must be limited to the potential impact of the Structures on the specific members' properties noted above and not the potential impact of ME1 generally on those properties. We disagree with Sunoco, however, that Appellants failed to introduce any evidence that debris from the Structures could land on Appellants' properties. Mr. Raiders testified as follows:

> Q. [Mr. Raiders], do you have an opinion as to whether the individual Appellant along with the community group have an interest greater than that of the general public as it relates to this facility?
>
> A. There's a bit of a discussion about how much interest you have because if you're in the quarter-mile to half-mile range you could have specific safety concerns about if there's an explosion in that structure with that pump in it and that roof lands in your yard. I'd be very concerned about that. If you're within the two- to three-mile range and there's an issue where you have specific problems with a cloud explosion, then I would be concerned that my windows are no longer in my house or worse.

(R.R. at 92a-93a.) Although an analysis of standing based on debris from the Structures necessarily implicates the operation of ME1, it is not based solely on ME1. Rather, it takes into consideration the relationship between the Structures and

---

[7] The Board also notes that Doug Lorenzen and Pamela Bishop, who are husband and wife, and Phillip J. Stober all live approximately two miles from the Site. We observe that Appellants do not argue in their brief that Mr. Lorenzen, Ms. Bishop, and Mr. Stober are directly and substantially impacted by the Structures to an extent greater than the average citizen.

13

ME1, when analyzing the impact that the Structures may have on Appellants' properties.

Given that Mr. Raiders testified that debris from the Structures could be dispersed one-quarter to one-half of a mile, Appellants who live within that range—*i.e.*, Dr. Boogaard and Ms. Tshudy—have standing to challenge the permit, because their properties may be impacted by the Structures themselves. The other individual Appellants, who live one mile or more away from the Structures, however, lack standing, because their objections are based upon concerns solely related to the operation of ME1. Given that two of the Association's members have standing, the Association likewise has standing to appeal the issuance of the Permit.

## B. Interpretation of Section 27-1722 of the Zoning Ordinance

As to whether the Board erred in concluding that Sunoco is entitled under Section 27-1722 of the Zoning Ordinance to an exemption from zoning requirements, we begin with a review of the relevant zoning provision. Section 27-1722 of the Zoning Ordinance provides:

> *For the purposes of this Chapter, public utilities exemptions to district requirements shall extend only to accessory support and maintenance structures and buildings not requiring human occupancy.* Such uses and structures including fences shall be located no closer than 10 feet to any lot line or road right-of-way line. Principal utility structures (*e.g.*, sewage treatment plants, electrical power plants, etc.) shall be permitted in any district but shall comply in all respects with the requirements for a principal use of the district in which it will be located. In either case, said utility corporation shall secure a building and zoning permit from the Zoning officer prior to the start of construction. *Said permit application shall include any and all approvals required by other agencies, etc., for the use specified.*

(R.R. at 25a.)

14

The Board interpreted Section 27-1722 of the Zoning Ordinance as *creating* an exemption for public utilities to which a public utility is entitled without need of a hearing or other approval process. We directed the parties to brief the issue of whether Section 27-1722 of the Zoning Ordinance provides for an "independent utility exemption," because we were skeptical of the Board's interpretation. The parties have since submitted supplemental briefs addressing this issue. Appellants contend that the plain language in Section 27-1722 of the Zoning Ordinance merely limits the extent of any public utility exemptions that may otherwise apply. In response, Sunoco argues that Section 27-1722 contains an implicit independent public utility exception. Specifically, Sunoco contends that the language at issue is an expansion on the exemption provided in Section 619 of the MPC. According to Sunoco, Section 619 of the MPC provides an upper threshold on municipalities' exercise of zoning power over public utility buildings but does not prevent municipalities from providing further constrictions in their zoning regulations beyond what is legislatively mandated. Section 27-1722 of the Zoning Ordinance, Sunoco contends, does just that because it limits the application of the Zoning Ordinance to public utility buildings beyond any limitation imposed by Section 619 of the MPC. The Township joins with Sunoco in its supplemental brief.

A review of the Zoning Ordinance reveals that it does not provide a mechanism or procedure for obtaining an exemption from the Township's zoning provisions based on public utility status, and the parties do not argue that the Zoning Ordinance *explicitly* creates such an exemption. Rather, Sunoco and the Township contend that Section 27-1722 of the Zoning Ordinance must be read to *implicitly* provide for a public utilities exemption. We must disagree with Sunoco's and the Township's argument that Section 27-1722 creates by implication a local exemption

for public utilities independent of already existing exemptions, such as those created by Section 619 of the MPC. Rather, a close reading of Section 27-1722 of the Zoning Ordinance reveals that it merely attempts to limit or clarify the application of existing "public utilities exemptions to district requirements" by providing that the exemptions "shall extend only to accessory support and maintenance structures and buildings not requiring human occupancy" and placing limits on the location of the structures or uses on a property. In other words, Section 27-1722 attempts to define or shape the type of zoning relief afforded to those public utilities determined to be entitled to public utility exemptions—presumably as determined by the PUC pursuant to the procedures set forth in Section 619 of the MPC.[8] Furthermore, we reject the notion that an exemption from local zoning can be implied to exist. That is not to say that a municipality cannot, through its zoning ordinance, explicitly create an exemption from zoning requirements for public utilities. Here, however, the Township did not enact such a provision.

---

[8] Because the Court concludes that Section 27-1722 of the Zoning Ordinance does not establish an independent public utility exemption, we need not address the remaining issues pertaining to the analysis employed by the Board in granting the exemption. We also do not address whether Section 27-1722 of the Zoning Ordinance, as construed herein, impermissibly encroaches on the PUC's preeminent authority to regulate public utilities, as that question is not before the Court at this time. *See Del. Riverkeeper*, 179 A.3d at 695 ("[Section 619 of the MPC and Section 1202 of the MPC, 53 P.S. § 11202,] viewed in contrast to the provisions of the Public Utility Code, support a determination that the General Assembly intended the PUC to be preeminent in regulation of public utilities when questions arise about local zoning, absent an express grant of authority to a local municipality.")

16

## IV.  CONCLUSION

Accordingly, we reverse the order of common pleas.


_____
P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug Lorenzen, Pamela Bishop,    :
Phillip J. Stober, and Concerned    :
Citizens of Lebanon County    :
   :
   :
       v.    :   No. 851 C.D. 2018
   :
West Cornwall Township    :
Zoning Hearing Board and    :
Sunoco Pipeline, L.P.    :
   :
Appeal of: Doug Lorenzen,    :
Pamela Bishop, Phillip J. Stober,    :
and Concerned Citizens of    :
Lebanon County    :

# **O R D E R**

AND NOW, this 23rd day of October, 2019, the order of the Court of Common Pleas of Lebanon County is hereby REVERSED.

 

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Doug Lorenzen, Pamela Bishop, :
Phillip J. Stober, and Concerned :
Citizens of Lebanon County :
 :
   v.   : No. 851 C.D. 2018
 : ARGUED:  September 10, 2019
West Cornwall Township :
Zoning Hearing Board and :
Sunoco Pipeline, L.P. :
 :
Appeal of: Doug Lorenzen, :
Pamela Bishop, Phillip J. Stober, :
and Concerned Citizens of :
Lebanon County :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**DISSENTING OPINION BY**
**SENIOR JUDGE LEADBETTER**    **FILED:  October 23, 2019**


    Although I agree with the majority opinion in its analysis of the merits of this dispute, I must respectfully dissent. While Objectors could clearly establish standing with respect to potential environmental and safety problems if the *use* at the site was in issue, I believe that the testimony regarding potential harm to them with regard to the building of a structure on the property is too speculative to carry the day. Accordingly, I would affirm on that basis.


         _____
         **BONNIE BRIGANCE LEADBETTER,**
         Senior Judge